**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00790

ROBERT MALDONADO,

      Petitioner,

v.

MISTELLE J. STARR, WARDEN, FLORENCE ADX,

      Respondent.

---

**PETITION SEEKING WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

---

## INTRODUCTION

Petitioner, Robert Maldonado ("Mr. Maldonado"), by and through undersigned *pro bono* counsel, hereby respectfully applies to this Court for a writ of habeas corpus declaring the current computation of his custodial credits unlawful and ordering the Bureau of Prisons ("BOP") to recognize September 15, 2021 as the date on which Mr. Maldonado began accruing credit toward completion of his federal sentence.

Mr. Maldonado is currently in the custody of Mistelle J. Starr, Warden of the United States Penitentiary, Administrative Maximum Facility at Florence, Colorado. His Federal Register Number is 63361-509.

## JURISDICTION AND VENUE

1.      Mr. Maldonado brings this action pursuant to 28 U.S.C. § 2241 for relief from Respondent's conduct. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2241.

2.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

3.      Venue is proper in the District of Colorado pursuant to 18 U.S.C. § 1391 and 28 U.S.C. § 2241 because Mr. Maldonado is confined at the Administrative Maximum Facility in Florence, Colorado.  *See United States v. Medina-Garcia*, No. 07-cv-02174, 2009 WL 1028206 (D. Colo. Apr. 16, 2009) ("An application for a writ of habeas corpus pursuant to § 2241 'must be filed in the district where the prisoner is confined.'") (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)).

## PARTIES

4.      Petitioner Robert Maldonado is serving an 88-month sentence after pleading guilty to a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 584 (N.D. Cal. Jan 30, 2023).  Mr. Maldonado is currently housed in the Administrative Maximum Facility ("Florence ADX") in Florence, Colorado.

5.      Respondent is the Mistelle J. Starr, Warden of FCC Florence which includes the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado.  Under the Warden's leadership, the BOP has caused the improper execution of Mr. Maldonado's sentence by refusing to award Mr. Maldonado custodial credit toward his sentence.  The Warden is the immediate physical custodian for the detention of the Petitioner at Florence ADX, and she is being sued in her official capacity.

## **FACTUAL / PROCEDURAL BACKGROUND**

6.     Since 2008, Mr. Maldonado has been serving a sentence of 19 years to life imposed by the State of California following a conviction on one count of attempting to dissuade a witness by force, in violation of Cal. Pen. Code § 136.1(c).

7.     On August 25, 2021, Mr. Maldonado and 16 other individuals were indicted in the Northern District of California for a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  *United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 1 (N.D. Cal. Aug. 25, 2021).

8.     On August 27, 2021, at the United States Attorney's request, the Court issued a writ of habeas corpus *ad prosequendum* ("writ") for Mr. Maldonado.  *United States v. Luna et al.*, No. CR 4:21-00329-YGR, ECF No. 491 (N.D. Cal. Aug. 27, 2021).  The writ directed the Warden of the California State Prison in Sacramento to produce Mr. Maldonado to the United States Marshals on September 15, 2021.

9.     On September 15, 2021, Mr. Maldonado was taken into federal custody pursuant to the writ and was housed at the United States Penitentiary at Atwater ("USP Atwater"), in Atwater, California.

10.     On September 2, 2022, Shannon Robbins, a Correctional Programs Specialist at BOP, wrote to the Secretary of California's Department of Corrections and Rehabilitation ("CDCR") that, "[t]he Federal Bureau of Prisons . . . has agreed to accept a transfer of primary jurisdiction for the above-named inmates [including Mr. Maldonado]."  *Maldonado v. Trate et al.*, No 1:23cv00993 No. 16-1 (E.D. Cal. Oct. 17, 2023).

11.    Pursuant to an anticipated Rule 11(c)(1)(C) plea agreement, on January 12, 2023, Mr. Maldonado filed his Sentencing Memorandum in advance of his January 26, 2023 court appearance.  *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 532 (N.D. Cal. Jan. 12, 2023).  The United States submitted its Sentencing Memorandum as to Robert Maldonado the same day.  *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 535 (N.D. Cal. Jan. 12, 2023).  Both Sentencing Memoranda were prepared in anticipation of a plea hearing scheduled for January 26, 2023.  Because the Rule 11(c)(1)(C) agreement provides the sentencing court with discretion to either accept or reject the agreement, the sentencing court planned to accept a plea and to sentence Mr. Maldonado on the same day.

12.    On January 17, 2023, while Mr. Maldonado was actively considering pursuing a plea agreement, Assistant United States Attorney ("AUSA") Kevin Rubino, wrote to Mr. Maldonado's counsel via email.  In that email, AUSA Rubino communicated that, despite his previous research indicating that the BOP could not provide Mr. Maldonado with custody credit for the time he spent at Atwater prior to sentencing, BOP had informed him that "BOP intends to provide your clients federal credit for the time spent in Atwater prior to sentencing." *See* Ex. A (January 17, 2023 email from AUSA Rubino to Mr. Flanagan) at 1.

13.    On January 24, 2023, the government filed a Supplemental Sentencing Memorandum stating that the BOP had explained to the government that it "intend[s] to grant several of the defendants in this case credit toward their federal terms for the time they have spent at Atwater."  The described credit applied to Robert Maldonado.  *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 560 (N.D. Cal. Jan. 24, 2023).

14.     On January 26, 2023, Mr. Maldonado appeared in court and pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement.  In the agreement, Mr. Maldonado agreed to plead guilty to one count of Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  The Court accepted the plea agreement, and that same day sentenced Mr. Maldonado to a term of 88 months in prison followed by five years of supervised release.

15.     During the January 26, 2023 hearing, Mr. Maldonado's counsel clarified "that Mr. Maldonado ought to get federal credit since the time he was first taken into federal custody." The Court responded, "That's what I understand.  I don't think I need to put anything on the record.  The Bureau of Prisons has made a determination that [the defendants] will have credit from the time they enter federal custody."  Ex. B (Transcript of Proceedings, *United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR (N.D. Cal. Jan. 26, 2023)) at 32:4-15.

16.     In April 2023, Mr. Maldonado received the BOP's Sentence Monitoring Computation Data which provided that Mr. Maldonado began accruing credit towards his 88-month sentence on September 3, 2022, rather than September 15, 2021—the date on which he was transferred to the United States Penitentiary at Atwater.

## EXHAUSTION

17.     Mr. Maldonado has adequately exhausted the BOP's administrative remedies before filing this action as required by precedent and set forth at 18 C.F.R. § 542.10.  *See Gifford v. Carter*, 2021 WL 11592124, at *2 (D. Colo. Mar. 26, 2021) ("Exhaustion of administrative remedies is a prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241.").

18.     Per the BOP's Administrative Remedy Program, the inmate is first required to present the issue informally to staff.  28 C.F.R. § 542.13.  Mr. Maldonado timely submitted an

Inmate Request to Staff Form on May 8, 2023.  In that request, Maldonado detailed why the BOP should compute his sentence to run from September 15, 2021.  *See* Ex. C (Inmate Request Form).  On May 17, 2023, a Staff Member responded denying Mr. Maldonado's Administrative Remedy request and reiterating that his sentence began in September 2022.  *Id.*

19.     After submitting the Informal Request, Mr. Maldonado submitted a formal Request for Administrative Remedy to his Unit/Case Manager on June 16, 2023.  This date is reflected in BOP's undated response.  ("This is in response to your Request for Administrative Remedy received in this office on June 16, 2023").  *See* Ex. D (Response to Request for Administrative Remedy).

20.     Because Mr. Maldonado was unsatisfied with the Warden's denial of his request, Mr. Maldonado submitted an appeal to the Western Regional Director on August 24, 2023.  *See* Ex. E (Regional Administrative Remedy Appeal).  In so doing, Mr. Maldonado sought relief in accordance with Section 542.15 of the Administrative Remedy Program.  28 C.F.R. § 542.15

21.     Mr. Maldonado received confirmation that the regional office received his appeal on September 27, 2023; the deadline for the office to respond to his appeal was October 27, 2023.  *See* Ex. F (Receipt for Administrative Remedy).

22.     After nine months and repeated attempts to receive the Regional Office's Response, on June 26, 2024, Mr. Maldonado received a response from Regional Director Rios-Marques denying his Request for Administrative Remedy.  *See* Ex. G (Regional Administrative Remedy Appeal Response).  This response incorrectly states that Mr. Maldonado's Appeal was dated August 14, 2023.  Mr. Maldonado's appeal was dated August 24, 2023.

23.     Mr. Maldonado submitted an Appeal to the Central Office which it received on July 11, 2024.  The Central Office rejected Mr. Maldonado's Appeal because he "did not provide . . . a copy of the (BP-09) Response from the Warden."  *See* Ex. H (Central Office Administrative Remedy Appeal) at 2.  Mr. Maldonado's counselor reached out to the Regional Office seeking this Response because Mr. Maldonado had never received a signed response from the Atwater Warden; however the Regional Office could not locate the response.  In turn, Mr. Maldonado resubmitted his appeal to the Central Office, this time with an accompanying memorandum written by his Unit Counselor, Mr. Atencio.  Mr. Atencio's memorandum described his communications with the Regional Office and its inability to locate the Atwater Warden's response to Mr. Maldonado's BP-9.  Nonetheless, the Central Office again rejected Mr. Maldonado's appeal because he did not include a copy of the BP-9 Response from the Warden.  At this point, Mr. Maldonado's counselor informed him that he had exhausted the BOP's Administrative Remedy process.

24.     Based on the facts set forth above, Mr. Maldonado has exhausted the BOP's Administrative Remedy Program such that he may now seek habeas corpus relief pursuant to 18 U.S.C. § 2241.

## ARGUMENT

The Supreme Court has held that "plea bargains are essentially contracts."  *Puckett v. United States*, 556 U.S. 129, 137 (2009) (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).  It follows that when evaluating a plea agreement, the courts may apply common law doctrines, including mutual assent, frustration of purpose, detrimental reliance, and recission, to determine the terms of the plea agreement, whether it was breached or is being executed improperly, and if

so, the appropriate remedy. *See, e.g.*, *id* ("When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy [. . . ]")."); *United States v. Cozad*, 21 F.4th 1259, 1264 (10th Cir. 2022) ("At bottom, a plea agreement is a contract and, like any other contract, it requires mutuality of assent and an exchange of consideration.") (citations omitted); *see also United States v. Bunner*, 134 F.3d 1000, 1004-05 (10th Cir. 1998) (considering frustration of purpose as a defense to enforcement of a plea agreement); *Santobello v. New York*, 404 U.S. 257, 262-63 (remanding the case to state court to, at a minimum, allow for "specific performance of the agreement on the plea").

Mr. Maldonado entered an 11(c)(1)(C) plea agreement after extensive discussions with the government over many months. Because the final plea agreement is akin to a contract per *Puckett*, in assessing the government's obligations under the agreement, this Court should consider common law contract formation principles, including (1) mutual assent; (2) the implied duty of good faith and fair dealing; and (3) detrimental reliance, when evaluating the understood terms of the plea agreement. *See Puckett* 556 U.S. at 137; *see also Watson v. Wyoming*, 83 Fed. App'x. 292, 299 (10th Cir. 2003) (finding that a plea agreement imposed an implied duty of good faith on both the defendant and the State).

A.    **Choice of Law**

As set forth above, a plea agreement is essentially a contract. *Puckett*, 556 U.S. at 137 (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). A valid contract requires not only offer, acceptance, and consideration, but also mutual assent as to the contract's material terms. Where, as here, the parties to the contract have not included a choice of law provision in their contract,

Section 188 of Restatement of Conflict of Laws is informative.  *See* Restatement (Second) of Conflict of Laws § 188 (1971).  This Section provides that the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction. . . ." *Id.*

In determining the applicable law, the Restatement urges courts to consider the following factors: (1) the place of contracting, (2) the place of contract negotiation; (3) the place of performance; (4) the location of the subject matter of the contract, and (5) the residence of the parties.  *Id.*  These factors overwhelmingly favor application of California law.  (1) The plea agreement was entered into in California, and (2) AUSA Rubino negotiated the terms of the agreement with Mr. Maldonado while he was housed in a federal penitentiary in Atwater, CA. (3) Mr. Maldonado served the first part of his sentence in California before being transferred to Colorado.  On the other hand, Mr. Maldonado's performance of the agreement is entirely untethered to Colorado; he just happens to be housed there based on the BOP's decision.  While the plea agreement involves the federal government, not the California state government, (4) the underlying criminal activity most directly affects California.  As described in the plea agreement itself, the conduct underlying Mr. Maldonado's conviction all occurred in the State of California. *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 568 (N.D. Cal. June 26, 2023).

**B.**     <u>**Mutual Assent**</u>

Based on the above choice of law analysis, this court should look to Ninth Circuit precedent regarding mutual assent.[1]  Consistent with other jurisdictions, "California law requires mutual assent of the parties to form a valid contract."  *Harps v. County of Los Angeles*, 8 Fed. App'x. 771, 772 (9th Cir Apr. 2001) (citation omitted).  Objective criteria are used to determine whether mutual assent existed, "the test being what the outward manifestations of consent would lead a reasonable person to believe."  *Id.*  "Mutual assent may be manifested by written or spoken words, or by conduct."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. Nov. 2014) (quoting *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (Cal. Ct. App. 1999)); *see also Rader v. Citibank N.A.*, 700 Fed. App'x. 817, 819 (10th Cir. 2017) ("Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." (quoting Restatement (Second) of Contracts § 18)); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *aff'd,* 925 F. Supp. 2d 1185 (D. Colo. 2013) ("While assent may be implied from the totality of circumstances and the acts of the parties, it must appear in some form." (citation omitted)).  Here, Mr. Maldonado and AUSA Rubino had a shared understanding that, in exchange for Mr. Maldonado's willingness to enter a guilty plea, he would receive an 88-month sentence, with federal custodial credit beginning on September 15, 2021.

---

[1] To the extent that this Court disagrees and finds 10th Circuit precedent applicable, this petition cites supporting law for both circuits.

1.  **Mr. Maldonado and AUSA Rubino's Outward Manifestations of Consent Would Lead A Reasonable Person to Believe that the Parties to the Plea Agreement Understood Mr. Maldonado's 88-month Term of Imprisonment to Begin on September 15, 2021.**

AUSA Rubino's conduct here is more than sufficient to establish that he entered into the plea agreement with an understanding that Mr. Maldonado's 88-month sentence was to effectively begin on September 15, 2021. Over the course of the months-long plea negotiation process and through his counsel, Mr. Maldonado sought federal custodial credit for the time that he spent in Atwater, such that when AUSA Rubino informed Mr. Maldonado that he would receive the requested credit—and that the government had no objection to this treatment— mutual assent as to this term existed when the plea agreement was entered into on January 26, 2023. *See, e.g.*, Ex. A ("I had previously told you . . . it was my understanding that federal credit for this time was not permitted by 18 USC § 3585(b) . . . I also reached out to BOP to get their view on the issue. BOP has now informed me . . . [it] intends to provide your clients federal credit **for the time spent in Atwater** prior to sentencing.") (emphasis added).

In his sentencing memorandum, Mr. Maldonado requested that he receive federal custodial credits beginning on September 15, 2021, when he was transferred to federal custody pursuant to the writ. *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 532 at 2 (Jan. 12, 2023). As he explained, Mr. Maldonado made this request because the court had ordered the BOP to award several of Mr. Maldonado's codefendants custodial credit beginning on the date that they were first transferred from State to Federal Prison, and, more practically, because he had been subject to the conditions of a federal penitentiary rather than a state penitentiary during this time. *Id.* The government filed a sentencing memorandum the same day. In it, AUSA Rubino noted that while "Maldonado requests federal custodial credits

beginning when he arrived in federal custody, as the Court previously ordered with respect to defendants Salvador Castro and Bryan Robledo," it was—at the time of the memorandum's writing—the government's understanding that 18 U.S.C. § 3585(b) precluded the BOP from crediting the time to Mr. Maldonado's federal sentence. *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 535 at 5 n.1 (Jan. 12, 2023). Thus, as of January 12, 2023, there was no mutual assent on this term, rather Mr. Maldonado was deliberating whether to accept the terms of the plea agreement as presented, and without the benefit of custodial credit for the time he spent in Atwater.

But several days later and before entry of the guilty plea, on January 17, 2023, AUSA Rubino provided enticing new information to Mr. Maldonado. AUSA Rubino emailed Mr. Maldonado's counsel to correct his earlier understanding of Mr. Maldonado's eligibility to receive federal custodial credits. Rubino wrote that he "had previously told [Mr. Maldonado's counsel] and the Court that, based on [his] research, it was [his] understanding that federal credit for this time was not permitted [but] . . . [he] reached out to BOP to get their view on the issue" *See* Ex. A. Noting the "unusual circumstances of this case, in which BOP voluntarily agreed to accept primary jurisdiction of [Mr. Maldonado], BOP intends to provide [Mr. Maldonado] federal credit for the time spent in Atwater prior to sentencing." *Id.* In addition to representing to Mr. Maldanado's counsel that BOP would provide the custodial credit which Mr. Maldonado sought, AUSA Rubino stated that he would take the affirmative step of "inform[ing] the Court of BOP's position and that **the government has no objection**." *See id.* (emphasis added).

Not only did AUSA Rubino share this information with Mr. Maldonado's counsel, but he also reaffirmed BOP's intention to award Mr. Maldonado custodial credit in the United States's

Supplemental Sentencing Memorandum.  *See United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 560 (Jan. 24, 2023) ("[BOP] explained that they intend to grant several of the defendants in this case credit toward their federal terms for the time that they have spent at Atwater. . . .  The BOP will therefore treat these defendants as being in the primary jurisdiction of the federal government for the duration of their time at Atwater.").  In the Memorandum, AUSA Rubino also noted that the court had previously included language indicating that custodial credits would begin accruing for two of Mr. Maldonado's codefendants, Castro and Robledo, on September 15, 2021.

Based on AUSA Rubino's written representations—both in email and in the government's Supplemental Sentencing Memorandum—when Mr. Maldonado entered into the plea agreement on January 26, 2023, he agreed to plead guilty and to serve a term of imprisonment of 88 months, beginning on the date that he was transferred to Atwater federal penitentiary.  To commemorate what was understood by both parties, Mr. Maldonado's counsel stated: "Your honor . . . the parties agree, and the government submitted a supplemental sentencing memorandum, that Mr. Maldonado ought to get federal credit time since the time he was **first** taken into federal custody, which I understand has been the case with other defendants who have been previously sentenced."  Ex. B at 32:4-10 (emphasis added).  The court affirmed its understanding of this agreement, commenting, "[t]hat's what I understand.  I don't think I need to put anything on the record.  The Bureau of Prisons has made a determination that [the Defendants] will have credit **from the time they enter federal custody** [on September 15, 2021]."  *Id.* at 32:11-14 (emphasis added).  The court's affirmation of its understanding of the parties' agreement on this term provides compelling evidence that a "reasonable person"

13

understood that part of Mr. Maldonado's plea agreement was that BOP would compute his sentence beginning September 15, 2021.

> **2.    Because Mr. Maldonado and AUSA Rubino mutually assented to the meaning of a material term—Mr. Maldonado's 88-month term of imprisonment was to have an effective start date of September 15, 2021—the meaning of this term became part of the plea agreement.**

As discussed in section B.1., Mr. Maldonado and AUSA Rubino formally entered into the plea agreement with a shared understanding that Mr. Maldonado would receive custodial credit beginning on September 15, 2021; the sentencing court subsequently affirmed that it shared the same understanding and adopted the 11(c)(1)(C) agreement.

However, the government may argue that the plea agreement is silent as to the date on which Mr. Maldonado began receiving federal custodial credit. To the extent that this Court finds the date on which Mr. Maldonado's sentence began per the agreement ambiguous, this Court should admit parol evidence to clarify the ambiguity.

Importantly, Mr. Maldonado is not seeking to modify or otherwise add to the agreement's terms, but rather seeks to clarify a potentially ambiguous term in his plea agreement by offering extrinsic evidence as to the meaning of the written terms of his contract. While the parol evidence rule typically bars the introduction of extrinsic evidence to show the existence of *additional* terms to a contract, one of the recognized exceptions to the parol evidence rule is to allow for extrinsic evidence to resolve ambiguities in the contract or to help interpret the contract's terms. *See Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (Cal. Ct. App. 1992) ("The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.'"); *see*

*also SCO Group, Inc v. Novell, Inc.*, 578 F.3d 1201, 1209-10 (10th Cir. 2009) (applying the same California contract principle).

Specifically, paragraph nine of Mr. Maldonado's plea agreement states, "I agree that a reasonable and appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed is as follows: 88 months imprisonment, 5 years of supervised release, $100 special assessment, and a fine as determined by the Court." *United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 568 (N.D. Cal. June 26, 2023). The "88 months imprisonment" term, as written, does not explicitly convey a start date. To resolve the ambiguity around when the duration of Mr. Maldonado's imprisonment term was intended to begin, this Court should consider the contracting parties' intent as evidenced in email communications and the on-the-record oral confirmation by Mr. Maldonado's counsel as discussed in the preceding paragraphs in Section B.1.

The sentencing court, the government, and Mr. Maldonado understood that Mr. Maldonado would begin accruing federal custodial credit on September 15, 2021; this understanding was shared by all parties to the plea agreement demonstrating mutual assent. *See United States v. Carrillo*, 709 F.2d 35, 36-37 (9th Cir. 1983) (applying contract law standards to an agreement to cooperate and finding that mutual assent was necessary for a term to become part of the agreement); *United States v. Cozad*, 21 F.4th 1259, 1264 (10th Cir. 2022) ("At bottom, a plea agreement is a contract, and like any other contract, it requires mutuality of assent and an exchange of consideration."). Therefore, this Court should order the BOP to execute Mr. Maldonado's sentence accordingly by granting him federal custodial credit for the duration of his time in federal custody which began when he entered Atwater USP on September 15, 2021.

**C.**     <u>**Promissory Estoppel**</u>

To the extent that this Court finds that the contract was deficiently formed, promissory estoppel still requires the government to honor its promise to Mr. Maldonado. Mr. Maldonado detrimentally relied on AUSA Rubino's promise that BOP would grant him federal custodial credit beginning on the date that he was transferred to Atwater, and therefore has the right to seek the government's performance of the contract. The facts set forth in this petition provide a factual basis from which to infer that: (1) AUSA Rubino made a promise; (2) AUSA Rubino reasonably should have expected his promise would induce Mr. Maldonado to accept a guilty plea; (3) Mr. Maldonado reasonably and detrimentally relied on AUSA Rubino's promise; and (4) AUSA Rubino's promise must be enforced to prevent injustice. *See Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 (9th Cir. 1992); *see also Wolff v. United Airlines, Inc.*, 854. F. App'x. 972, 973 (10th Cir. 2021); *Daniels v. Colorado Dep't. of Corrections*, 2009 WL 3246198 (D. Colo 2009) (analyzing plea agreement by relying on four elements of promissory estoppel).[2]

**1.**     **AUSA Rubino Promised Mr. Maldonado that He Would Receive Federal Custodial Credit Beginning When He Arrived at Atwater, on September 15, 2021.**

"To form the basis of a promissory estoppel claim, the alleged promise must 'be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the

---

[2] Promissory estoppel provides an alternative remedy to enforce an otherwise deficiently formed contract. *See Harriman v. Smart*, 2024 WL 3581700 (D. Colo. July 30, 2024). For the reasons discussed in Section A, this Court should apply California's promissory estoppel framework to assess Mr. Maldonado's claim. But even if this Court applies Colorado law instead of California law—a position this Petition covers—the conclusion remains the same.

promise according to its terms.'" *Hudson v. Wagner's LLC.*, 2022 WL 3597163, at *6 (D. Colo. 2022); *see also PC Drivers Headquarters LP v Malwarebytes Inc.*, 371 F. Supp. 3d 652, 667 (N.D. Cal. 2019) ("The asserted promise must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action.") (citation omitted). Before Mr. Maldonado formally entered into the plea agreement, AUSA Rubino represented in writing to Mr. Maldonado's counsel that he would receive federal custodial credit for the time served at Atwater up until his sentencing. *See supra* Section B.1. (describing AUSA Rubino's email, the government's supplemental sentencing memorandum, and comments made during the plea agreement hearing). AUSA Rubino's promise to Mr. Maldonado that he would receive federal custodial credit for the time he spent at Atwater is sufficiently specific that, under either Colorado or California law, it serves as the basis of a promissory estoppel claim. In his email to Mr. Maldonado's counsel, AUSA Rubino does not convey uncertainty or suggest that Mr. Maldonado will receive federal custodial credit only if certain conditions are met. Further, the credit to which Mr. Maldonado will be entitled is easily calculated based on the date that he was received at Atwater.

2. **AUSA Rubino Should Have Expected that this Promise Would Induce Mr. Maldonado To Proceed with the Plea Agreement.**

While neither Mr. Maldonado nor his counsel can say with certainty what AUSA Rubino's motivations for providing Mr. Maldonado with BOP's updated position on custodial credits were, AUSA Rubino's affirmative acts suggest that he understood that receiving custodial credit beginning on September 15, 2021, when Mr. Maldonado arrived at Atwater, was an important factor as Mr. Maldonado decided whether to enter into the plea agreement. AUSA Rubino specifically reached out to Mr. Maldonado's counsel to correct his earlier misconception

about Mr. Maldonado's eligibility to receive custodial credit because he recognized that this would be important to him. Because an individual's eligibility to receive custodial credit for time served directly impacts their release date, it is entirely logical to assume that, for any defendant facing a custodial sentence, a promise that effectively provides for an earlier release date would induce action. In Mr. Maldonado's case, the difference between when he first arrived at Atwater—September 15, 2021—and when California relinquished primary jurisdiction—September 3, 2022—is nearly a year. Mr. Maldonado's total sentence is 88 months. Therefore, AUSA Rubino should have understood that receiving custodial credit for more than 10% of his total sentence would be material to Mr. Maldonado and induce him to proceed with his guilty plea. In entering a guilty plea, Mr. Maldonado reasonably relied on AUSA Rubino's representation that he would receive federal custodial credit for time spent in Atwater USP and this Court must enforce the government's promise to avoid injustice.

Mr. Maldonado came to rely on AUSA Rubino's repeated representation that he would receive federal custodial credit when the time came for him to make a final decision about entering into the plea agreement with the government. This reliance was reasonable, especially given the courts' expectations of prosecutors. Courts of Appeal have explained that prosecutors must choose their words with care and operate with the utmost rectitude.[3] *See Sconce v. Garcetti*, 96 F.3d 1451, at *4 n.6 (9th Cir. 1996); *United States v. Tremble*, 266 Fed. App'x. 749,

---

[3] This is not to say that AUSA Rubino did not choose his words carefully—in fact, AUSA Rubino went so far as to confirm his representation with the BOP before suggesting to Mr. Maldonado that he could receive custodial credit for the time he spent at Atwater. Instead, this sentiment underscores the reasonableness of Mr. Maldonado's reliance on AUSA Rubino's representation.

752 (10th Cir. 2008); *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286, 296 (2d Cir. 1976).  As noted by Mr. Maldonado's counsel in a communication sent to the prosecution, the representations about the credits were made before official sentencing, during a time in which Mr. Maldonado had not yet waived his constitutional right to trial.  *See* Ex. I, Letter from Mark Flanagan to Kevin Rubino (Aug. 9, 2023).  Furthermore, both the United States Attorney's Office and the BOP operate within the Department of Justice, an executive department of the United States.  *See* 28 C.F.R. § Pt. 61, App. A; 28 U.S.C.A. § 501; *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) (explaining that Assistant United States Attorneys derive their power to prosecute directly from the Attorney General and the Department of Justice).  It logically follows that representations made by one "arm" of the Department of Justice should bind the other "arms."  Here, AUSA Rubino's representation to Mr. Maldonado regarding his eligibility for custodial credit should bind the BOP, particularly given the representation that BOP provided AUSA Rubino before AUSA Rubino relayed BOP's position to Mr. Maldonado. *See* Ex. A.

The Supreme Court recognizes the benefits of "dispos[ing] of criminal charges by agreement between the prosecutor and the accused," but only if there is fairness in securing such an agreement.  *See Santobello v. New York*, 404 U.S. 257, 261 (1971).  Further, if the plea agreement "was induced by promises, the essence of those promises must in some way be made known."  *Id.* at 261-62.  In addition, the Court has held that during plea hearings "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  It is this presumption that the government is tasked with overcoming if it wishes to deviate from AUSA Rubino's earlier representations.  In *Blackledge* the Court held that during

a plea hearing the "representations of the defendant, his lawyer, and the prosecutor . . . as well as any findings made by the judge accepting the plea, constitute a *formidable barrier* in any subsequent collateral proceedings." *Id.* (emphasis added). Now, during these collateral proceedings, the government will be unable to overcome the "formidable barrier" established by Mr. Maldonado's attorney's representations, AUSA Rubino's representations, and the sentencing Court's understanding of the plea agreement, as expressed verbally during the sentencing hearing.

As in *Santobello* where the defendant was "induced" to enter the plea agreement following negotiations during which the prosecutor agreed to pursue a lesser included offense and to make no sentencing recommendation, Mr. Maldonado was induced to enter a guilty plea at the January 26, 2023 hearing by (among other things) the AUSA's representation that Mr. Maldonado would receive federal custodial credit for the duration of his time in USP Atwater.

Where the plea agreement rests "in any significant degree on a promise or agreement of the prosecutor, [such] that it can be said to be part of the inducement or consideration," the Court held that the promise must be fulfilled. *Santobello*, 404 U.S. at 262. The judge who accepted Mr. Maldonado's plea agreement underscored this very point at a later hearing in the same case, stating, "You can make an affirmative representation with respect to your affirmative understanding upon which they are relying, and if you have misrepresented that or if it turns out that your representation was false, then you're in breach of the agreement." Ex. J (Transcript of Proceedings, *United States v. Cervantes et al.*, CR 21-00328-YGR (N.D. Cal. May 25, 2023)) at 10:17-18, 15:19-23.

The government's post-sentencing assertion that it was "given misinformation" about the BOP's position is insufficient to overcome the "formidable barrier" created by its "open declarations" in court. *See id.* at 11:8-14. If a party merely presents "conclusory allegations unsupported by specifics" their motion to overcome the previous court's understanding should be dismissed. *See Blackledge* 431 U.S. at 73-74.

The sentencing court's understanding regarding Mr. Maldonado's credits for time served was undoubtedly informed by the government's Supplemental Sentencing Memorandum which was submitted to clarify a previous misunderstanding as to whether the BOP would agree to credit the time Mr. Maldonado and his codefendants for time served at Atwater prior to sentencing. *United States v. Cervantes et al.*, No. 4:21-cr-00328-YGR, ECF No. 560 (N.D. Cal. Jan. 24, 2023). In this Supplemental Memorandum, the government made clear that despite its earlier understanding "that the defendant would not be granted custody credit toward their federal sentences for the time spent at Atwater," they had since contacted the BOP and now "intend[ed] to grant several of the defendants in this case credit toward their federal terms for the time they have spent at Atwater." *Id.* at 2. The government continued that, as for five of Mr. Maldonado's co-defendants, the BOP would treat Mr. Maldonado as being in the primary jurisdiction of the federal government (and therefore eligible to receive credit) for the duration of his time at Atwater. *See id.* In representing the situation in this way, the government led the Court to believe it no longer had to clarify in its order the date on which Mr. Maldonado would begin accruing federal custody credit as it had done for Mr. Maldonado's codefendants, Bryan Robledo and Salvador Castro. Despite this, and ignoring the sentencing court's understanding, the government now claims that because it was misinformed and no agreement between the

prosecutor and the BOP had been reached, Mr. Maldonado's federal sentence should be executed in accordance with the parties' understanding and representations at the time of the sentencing hearing. The government will not be able to erode the "formidable barrier" established in court that day, nor is it appropriate for BOP to calculate Mr. Maldonado's in a manner inconsistent with how it was understood by all parties at the time it was entered.

> **3.    Despite the AUSA's Representations, Mr. Maldonado's Sentence is Being Improperly Executed Because the BOP Refuses to Grant Mr. Maldonado Credit for the Entirety of the Time He Served at USP Atwater.**

As explained in Section B.1., Mr. Maldonado entered into the plea agreement based on a reasonable belief that he would receive federal custodial credit beginning on September 15, 2021. Further, the sentencing court approved this plea agreement with the understanding that Mr. Maldonado would receive full credit at Atwater from September 15, 2021. *See supra* Section B. Instead, contrary to both Mr. Maldonado and the court's understanding, the BOP now asserts that it may only award Mr. Maldonado with custodial credit for the period beginning on September 15, 2021.

In April 2023, several months after the court approved the plea agreement, Mr. Maldonado received the BOP's Sentence Monitoring Computation Data which indicated that he began receiving credit on September 3, 2022—not September 15, 2021 as the government represented he would. Mr. Maldonado promptly submitted a request to the BOP Staff explaining why he believed he was entitled to credits beginning in September of 2021, citing to the government's January 24, 2023 Supplemental Sentencing Memorandum and Sentencing Hearing transcript. The BOP replied that Mr. Maldonado was not entitled to credit for the time he spent at Atwater prior to September 3, 2022, directly contradicting AUSA Rubino's representation of

the BOP's position.  *See* Ex. C.  Mr. Maldonado has since received repeated similar denials and has exhausted the Administrative Remedy Program.  *See supra* "Exhaustion."

The shared understanding between Mr. Maldonado and AUSA Rubino that existed at the time the plea agreement was formed continues to clash with BOP's performance.  At a May 25, 2023 hearing concerning Mr. Maldonado's codefendants, AUSA Rubino admitted that BOP "had originally informed [him] that it was September 2021," that the information that Rubino previously provided in the government's Supplemental Sentencing Memorandum was "misinformation," and that he "was disappointed to see the revision in [BOP's] position because [he] had already represented it."  Ex. J at 10:17-18, 11:12-17.  The sentencing court even expressed frustration, noting that it seemed that BOP and CDCR were "making a mountain out of a molehill, and the consequence of the decision [regarding whether the defendants' would receive federal custodial credit] is unacceptable." *Id.* at 12:11-14.  To avoid a situation in which the not-yet-sentenced codefendants did not receive their promised custodial credits, the court suggested to AUSA Rubino that he could shorten the sentence in the plea agreement to preemptively account for the time that would otherwise be due based on a September start date. *Id*. at 13:3-5.

On July 21, 2023, months after the *Guillen* proceedings, AUSA Rubino reiterated his position to Mr. Maldonado's attorney, claiming that he "received inaccurate information from BOP about custody credits," which was reflected in the government's "supplemental sentencing memorandum [which] share[d] the BOP's stated position that [Mr.] Maldonado would be granted credit back to September 15, 2021." Ex. K (E-mail from Kevin Rubino to Mark Flanagan (Jul. 21, 2023)).  However, AUSA Rubino went on to insist that Mr. Maldonado is "not entitled

to any relief," because it was not a written element of the plea agreement, and the erroneous representation made "two days before the change-of-plea hearing" was not an affirmative one. *Id*. The law takes a different view. As the court in *U.S. v. Cooper* asserted, "Supreme Court precedent clearly holds the government accountable with regard to any promises made to induce a defendant to plead guilty." 70 F.3d 563, 565 (10th Cir. 1995) (citing *Santobello v. New York*, 404 U.S. at 269). The Supreme Court in *Santobello* further made clear that unrecorded promises do not absolve either side of the plea bargain of their duty of good faith. *Id*. at 259. *See also Brady v. United States*, 397 U.S. 742, 755 (1970) (ruling that a guilty plea "entered into by one fully aware of the direct consequences . . . must stand unless induced by . . . misrepresentation (including unfulfilled or unfulfillable promises)").

Where, as here, the plea agreement was entered into in reliance on a promise, and further, that promise was understood to be part of the agreement by all parties present at the sentencing hearing, the BOP should compute the sentence accordingly. By providing Mr. Maldonado with custodial credits beginning only after September 3, 2022, the BOP is contributing to the improper execution of Mr. Maldonado's sentence by depriving him of deserved custodial credit.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court direct Respondents to award Mr. Maldonado with custodial credit towards his 88-month federal sentence from September 15, 2021.

Respectfully submitted this 11th day of March, 2025.

WILMER CUTLER PICKERING HALE
AND DORR LLP


*s/ Mary (Mindy) V. Sooter*
Mary (Mindy) V. Sooter
1225 17th Street, Suite 2600
Denver, CO 80202
Telephone:  (720) 274-3164
Email:  Mindy.Sooter@wilmerhale.com

*Attorney for Petitioner Robert Maldonado*