# **<u>EXHIBIT B</u>**

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4

 5   UNITED STATES OF AMERICA,      )  CR-21-00328-YGR-14
                                    )  CR-21-00328-YGR-15
 6                  PLAINTIFF,      )
                                    )  SAN JOSE, CALIFORNIA
 7         VS.                      )
                                    )  JANUARY 26, 2023
 8   CERVANTES, ET AL,             )
                                    )  PAGES 1-54
 9                  DEFENDANT       )
                                    )
10   _____ )
```

                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
                    UNITED STATES DISTRICT JUDGE

                      A P P E A R A N C E S


        FOR THE PLAINTIFF:      **BY:  KEVIN RUBINO**
                                     **LEIF DAUTCH**
                                UNITED STATES ATTORNEY'S OFFICE
                                450 GOLDEN GATE AVENUE, 11TH FL
                                SAN FRANCISCO, CA 94102

        FOR THE DEFENDANT:      **BY:  MARK FLANAGAN**
        MALDONADO                    **JUN LIM**
                                WILMER CUTLER PICKERING
                                HALE & DORR LLP
                                2600 EL CAMINO REAL, STE 400
                                PALO ALTO, CA 94306


        PROBATION:              KATRINA CHU

                APPEARANCES CONTINUED ON NEXT PAGE

        OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185


            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

1          APPEARANCES CONTINUED:

2          FOR THE DEFENDANT:    **BY:   JOHN JORDAN**
           ZARATE                LAW OFFICE OF JOHN J. JORDAN
3                                601 MONTGOMERY STREET, STE 850
                                 SAN FRANCISCO, CA 94111

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    JANUARY 26, 2023 |
| 2 | P R O C E E D I N G S |
| 3 | (COURT CONVENED AT 8:14 A.M.) |
| 4 | THE CLERK:  NOW CALLING CRIMINAL CASES 21-328-YGR-14 |
| 5 | AND 15.  UNITED STATES V. ROBERT MALDONADO, AND UNITED STATES |
| 6 | V. ERIC ZARATE. |
| 7 | COUNSEL, STARTING WITH THE GOVERNMENT, PLEASE STATE YOUR |
| 8 | APPEARANCE FOR THE RECORD. |
| 9 | MR. RUBINO:  GOOD MORNING, YOUR HONOR. |
| 10 | KEVIN RUBINO FOR THE UNITED STATES, AND HERE AT ME WITH |
| 11 | COUNSEL TABLE IS AUSA LEIF DAUTCH. |
| 12 | THE COURT:  GOOD MORNING. |
| 13 | MR. JORDAN:  GOOD MORNING, YOUR HONOR. |
| 14 | JOHN JORDAN ON BEHALF OF MY CLIENT, ERIC ZARATE, WHO IS |
| 15 | PRESENT IN COURT IN THE CUSTODY OF THE U.S. MARSHAL. |
| 16 | MR. FLANAGAN:  GOOD MORNING, YOUR HONOR. |
| 17 | MARK FLANAGAN ON BEHALF OF ROBERT MALDONADO, ALONG WITH MY |
| 18 | ASSOCIATE, JUN LIM. |
| 19 | THE COURT:  OKAY.  I NEED THE TWO OF YOU TO SWITCH |
| 20 | SIDES. |
| 21 | MR. MALDONADO, YOU ARE ON THE OTHER SIDE.  YOU ARE NUMBER |
| 22 | 14.  YOU ARE NUMBER 15. |
| 23 | FOR PURPOSES OF THESE PROCEEDINGS, I'M GOING TO ASK YOU A |
| 24 | SERIES OF QUESTIONS.  I WOULD LIKE YOU TO ANSWER FIRST, |
| 25 | MR. MALDONADO, AND THEN MR. ZARATE, YOU WOULD ANSWER SECOND. |

1          PROBATION OFFICER:  GOOD MORNING, YOUR HONOR.

2      KATRINA CHU WITH U.S. PROBATION.

3          THE COURT:  ALL RIGHT.  GOOD MORNING.

4      SO YOU ARE NOT GOING TO NEED THAT MIC RIGHT NOW.

5      MR. MALDONADO, I NEED YOU TO STAND IN FRONT OF A MIC.

6      WE HAVE A COURT REPORTER, BUT SHE'S REMOTE, SO IF YOU

7  SPEAK INTO THE MIC, IT'S GOING TO HELP HER HEAR YOU.

8      I UNDERSTAND FROM YOUR ATTORNEYS THAT YOU HAVE RESOLVED

9  THIS CASE WITH THE GOVERNMENT AND YOU WISH TO CHANGE YOUR PLEA;

10  IS THAT CORRECT?

11          MR. MALDONADO:  YES, THAT IS CORRECT.

12          MR. ZARATE:  YES, YOUR HONOR.

13          THE COURT:  OKAY.

14      THEN I WILL HAVE THE COURTROOM DEPUTY SWEAR YOU IN.

15          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

16          (WHEREUPON THE DEFENDANTS WERE GIVEN THE OATH.)

17          THE CLERK:  MR. MALDONADO FIRST.

18          MR. MALDONADO:  YES.

19          THE CLERK:  THANK YOU.

20      MR. ZARATE.

21          MR. ZARATE:  YES.

22          THE CLERK:  THANK YOU.

23          THE COURT:  OKAY.  YOU HAVE JUST BEEN PLACED UNDER

24  OATH.

25          DO EACH OF YOU UNDERSTAND THAT THAT MEANS, THAT YOU MUST

```
 1       TELL ME THE TRUTH IN RESPONSE TO MY QUESTIONS, THEN IF YOU FAIL

 2       TO TELL ME THE TRUTH, THE UNITED STATES GOVERNMENT CAN BRING

 3       CHARGES AGAINST YOU IN ADDITION TO THE CHARGES THAT WE ARE

 4       DISCUSSING HERE IN COURT TODAY.

 5            DO YOU UNDERSTAND?

 6                 MR. MALDONADO:  YES, I DO.

 7                 MR. ZARATE:  YES.

 8                 THE COURT:  THE PURPOSES OF THESE PROCEEDINGS IS TO

 9       REVIEW YOUR CONSTITUTIONAL RIGHTS.  ALL OF THOSE RIGHTS ARE

10       OUTLINED IN YOUR AGREEMENT WITH THE GOVERNMENT, BUT WE ARE

11       GOING TO DO THEM HERE ORALLY IN COURT; DO YOU UNDERSTAND?

12                 MR. MALDONADO:  YES.

13                 MR. ZARATE:  YES.

14                 THE COURT:  IF AT ANY TIME DURING OUR DISCUSSION, YOU

15       NEED TO SPEAK TO YOUR LAWYER, WOULD YOU AGREE TO LET ME KNOW SO

16       THAT I CAN PROVIDE YOU WITH THAT OPPORTUNITY?

17                 MR. MALDONADO:  OKAY.

18                 MR. ZARATE:  OKAY.

19                 THE COURT:  IF AT ANY TIME DURING OUR DISCUSSION, IF

20       YOU DO NOT UNDERSTAND MY QUESTION, WILL YOU AGREE TO LET ME

21       KNOW SO THAT I CAN REPHRASE?

22                 MR. MALDONADO:  YES, I WILL LET YOU KNOW.

23                 MR. ZARATE:  YES.

24                 THE COURT:  ALL RIGHT.

25            WE ARE GOING TO START WITH YOU, MR. MALDONADO.
```

```
 1              JUST SOME BASICS.  WHAT IS YOUR FULL NAME?

 2              MR. MALDONADO:  ROBERT MALACHI MALDONADO.

 3              THE COURT:  AND HOW DO YOU SPELL MALACHI?

 4              MR. MALDONADO:  M-A-L-A-C-H-I.

 5              THE COURT:  HAVE YOU EVER GONE BY ANY OTHER NAMES?

 6              MR. MALDONADO:  KJ.

 7              THE COURT:  HOW OLD ARE YOU?

 8              MR. MALDONADO:  47 YEARS OLD.

 9              THE COURT:  WHAT IS THE HIGHEST LEVEL OF EDUCATION

10     YOU'VE ACHIEVED?

11              MR. MALDONADO:  HIGH SCHOOL DIPLOMA.

12              THE COURT:  DID YOU TAKE ANY COLLEGE COURSES, LIKE

13     COMMUNITY COLLEGE?

14              MR. MALDONADO:  YES.

15              THE COURT:  WHAT DID YOU TAKE?

16              MR. MALDONADO:  I DID A VOCATIONAL TRAINING.

17              THE COURT:  OKAY.  WHAT AREA?

18              MR. MALDONADO:  GILROY.  GAVILAN COLLEGE.

19              THE COURT:  OKAY.  SO I TAKE IT YOU CAN READ AND

20     WRITE ENGLISH; IS THAT RIGHT?

21              MR. MALDONADO:  YES.

22              THE COURT:  AND WHERE WERE YOU BORN?

23              MR. MALDONADO:  SAN JOSE, CALIFORNIA.

24              THE COURT:  WITHIN THE LAST 24 HOURS, HAVE YOU TAKEN

25     ANY MEDICATIONS?
```

```
 1                    MR. MALDONADO:  NO.

 2                    THE COURT:  ANY DRUGS, WHETHER LEGAL OR NOT?

 3                    MR. MALDONADO:  NONE.

 4                    THE COURT:  ANY ALCOHOLIC BEVERAGES?

 5                    MR. MALDONADO:  NO.

 6                    THE COURT:  ARE YOU -- IN ANY WAY, DO YOU FEEL LIKE

 7       YOU CAN'T UNDERSTAND WHAT'S HAPPENING IN COURT TODAY?

 8                    MR. MALDONADO:  NO.

 9                    THE COURT:  MR. ZARATE, SAME WITH YOU.  LET'S START

10       WITH SOME BASICS.

11            HOW OLD ARE YOU?

12                    MR. ZARATE:  45.

13                    THE COURT:  AND WHAT IS YOUR FULL NAME?

14                    MR. ZARATE:  ERIC SEBASTIAN ZARATE.

15                    THE COURT:  AND HOW DO YOU SPELL SEBASTIAN?

16                    MR. ZARATE:  S-E-B-A-S-T-I-A-N.

17                    THE COURT:  HAVE YOU EVER GONE BY ANY OTHER NAMES?

18                    MR. ZARATE:  YES, BABY G.

19                    THE COURT:  ANYTHING ELSE?

20                    MR. ZARATE:  THAT'S IT.

21                    THE COURT:  WHAT'S THE HIGHEST LEVEL OF EDUCATION

22       YOU'VE ACHIEVED?

23                    MR. ZARATE:  NINTH GRADE.

24                    THE COURT:  HAVE YOU TAKEN ANY CLASSES BEYOND THOSE?

25                    MR. ZARATE:  YES.
```

```
 1                    THE COURT:  WHAT HAVE YOU DONE?

 2                    MR. ZARATE:  GED AT ATWATER.

 3                    THE COURT:  OKAY.

 4              AND I READ THAT YOU DID -- YOU PASSED EVERYTHING BUT THE

 5         MATH?

 6                    MR. ZARATE:  YES, MA'AM.

 7                    THE COURT:  WHEN ARE YOU SCHEDULED TO DO YOUR MATH

 8         AGAIN?

 9                    MR. ZARATE:  WITH ATWATER, IT'S VERY HARD TO TELL

10         BECAUSE THEY WILL TELL YOU WHENEVER THEY GET THE OPPORTUNITY.

11              THE THING WAS THAT THEY DON'T GIVE US TIME TO PRACTICE

12         WITH THOSE CALCULATORS, BECAUSE THEY GIVE US ONLY THE

13         CALCULATOR WHEN WE TAKE THE TEST.  WE CAN'T PRACTICE WITH THEM

14         BEFOREHAND, SO WE DON'T KNOW HOW TO USE THEM.  THAT'S THE ISSUE

15         WE ARE HAVING RIGHT NOW.

16                    THE COURT:  OKAY.

17              CAN YOU READ AND WRITE ENGLISH OKAY?

18                    MR. ZARATE:  YES, MA'AM.

19                    THE COURT:  WHERE WERE YOU BORN?

20                    MR. ZARATE:  SAN JOSE, CALIFORNIA.

21                    THE COURT:  AND WITHIN THE PAST 24 HOURS, HAVE YOU

22         TAKEN ANY MEDICATIONS?

23                    MR. ZARATE:  NO, MA'AM.

24                    THE COURT:  HAVE YOU HAD ANY DRUGS, WHETHER LEGAL OR

25         NOT?
```

```
1                    MR. ZARATE:  NO.

2                    THE COURT:  ANY ALCOHOLIC BEVERAGES?

3                    MR. ZARATE:  NO.

4                    THE COURT:  ALL RIGHT.

5              ARE YOU ABLE TO THINK CLEARLY HERE IN COURT?

6                    MR. ZARATE:  YES.

7                    THE COURT:  AS I MENTIONED, THE PURPOSES OF THESE

8         PROCEEDINGS ARE TO REVIEW YOUR CONSTITUTIONAL RIGHTS, SO THAT'S

9         WHAT WE ARE GOING TO DO.

10             DO EACH OF YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO

11        MAINTAIN OR TO KEEP YOUR NOT GUILTY PLEA?  DO YOU UNDERSTAND

12        YOU HAVE THAT RIGHT?

13                   MR. MALDONADO:  YES.

14                   MR. ZARATE:  YES.

15                   THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

16        TO A JURY TRIAL?

17                   MR. MALDONADO:  YES.

18                   MR. ZARATE:  YES.

19                   THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

20        TO BE REPRESENTED BY AN ATTORNEY AT ALL STAGES OF THE

21        PROCEEDINGS, AND IF YOU CANNOT AFFORD AN ATTORNEY, THE COURT

22        WILL APPOINT ONE TO REPRESENT YOU; IN FACT, YOU HAVE THE RIGHT

23        TO REPRESENT YOURSELF, WITH THE COURT'S APPROVAL.

24             DO YOU UNDERSTAND YOU HAVE THOSE RIGHTS?

25                   MR. MALDONADO:  YES.
```

1        MR. ZARATE:  YES.

2        THE COURT:  NOW I MENTIONED JURY TRIAL.

3    YOU UNDERSTAND WHAT THAT MEANS IS THAT BEFORE YOU COULD

4    BE -- WELL, YOU HAVE A RIGHT TO HEAR WHAT THE EVIDENCE IS THAT

5    THE GOVERNMENT HAS AGAINST YOU, THEY JUST DO NOT SEND PEOPLE

6    OFF TO PRISON, THE GOVERNMENT ACTUALLY HAS TO COME IN AND PROVE

7    ITS CASE.

8        AND BY DOING THAT, WHAT THEY HAVE TO DO IS THEY HAVE TO

9    BRING IT HERE, PRESENT IT TO A JURY, WHO WILL SIT IN THAT BOX,

10   AND 12 JURORS HAVE TO UNANIMOUSLY AGREE THAT EACH AND EVERY

11   ELEMENT OF EACH AND EVERY CRIME THAT IS CHARGED AGAINST YOU HAS

12   BEEN PROVED BEYOND A REASONABLE DOUBT.

13       AND THAT EVIDENCE COULD BE DOCUMENTS, IT COULD BE PHYSICAL

14   EVIDENCE, IT COULD BE THINGS, IT COULD BE TESTIMONY, SWORN

15   TESTIMONY FROM THE WITNESS STAND.  BUT THE GOVERNMENT ACTUALLY

16   HAS TO BRING IT INTO THE COURTROOM AND PRESENT IT.  AND A JURY

17   HAS TO AGREE.

18       DO YOU UNDERSTAND THAT PROCESS?

19       MR. ZARATE:  YES.

20       MR. MALDONADO:  YES.

21       THE COURT:  DO YOU UNDERSTAND THAT YOU THEN HAVE THE

22   RIGHT TO SEE, CONFRONT AND CROSS-EXAMINE ALL OF THAT EVIDENCE

23   THAT'S BROUGHT AGAINST YOU?

24       MR. MALDONADO:  YES.

25       MR. ZARATE:  YES.

1      THE COURT:  YOU ALSO HAVE THE RIGHT TO REMAIN SILENT.

2      AND BY THAT, I MEAN THAT NO ONE CAN COMPEL YOU TO TESTIFY

3   AGAINST YOURSELF OR TO PRESENT EVIDENCE AGAINST YOURSELF.  YOU

4   HAVE NO BURDEN, DO YOU UNDERSTAND?

5      MR. MALDONADO:  YES.

6      MR. ZARATE:  YES.

7      THE COURT:  YOU ALSO, THOUGH, HAVE THE RIGHT TO

8   TESTIFY AND TO PRESENT EVIDENCE, IF YOU SO CHOOSE.  IN FACT,

9   YOU HAVE THE RIGHT TO USE THE POWER OF THE GOVERNMENT TO COMPEL

10  THE ATTENDANCE OF WITNESSES AND THE PRODUCTION OF EVIDENCE TO

11  BE BROUGHT INTO COURT ON YOUR BEHALF AND IN YOUR DEFENSE; DO

12  YOU UNDERSTAND?

13     MR. MALDONADO:  YES.

14     MR. ZARATE:  YES.

15     THE COURT:  NOW IF YOU CHANGE YOUR PLEA TODAY, YOU

16  ARE GIVING UP ALL OF THOSE TRIAL RELATED RIGHTS; DO YOU

17  UNDERSTAND?

18     MR. MALDONADO:  YES.

19     MR. ZARATE:  YES.

20     THE COURT:  AND IF YOU CHANGE YOUR PLEA, THERE WILL

21  BE NO JURY TRIAL, SO THERE WILL BE NO VERDICT, SO THERE'S

22  NOTHING TO APPEAL, IN TERMS OF VERDICT; DO YOU UNDERSTAND THAT?

23     MR. MALDONADO:  YES.

24     MR. ZARATE:  YES.

25     THE COURT:  UNDER YOUR AGREEMENT WITH THE GOVERNMENT,

1    YOU ARE SIMILARLY GIVING UP YOUR RIGHTS TO APPEAL, BUT THESE

2    ARE VERY BROAD WAIVERS.

3        SO LET'S HAVE YOUR ATTORNEYS POINT YOU -- THERE IT IS,

4    PARAGRAPHS 4 AND 5 OF YOUR AGREEMENT, WHICH I WILL SUMMARIZE,

5    BUT THESE PROVISIONS INDICATE THAT YOU ARE AGREEING TO GIVE UP

6    YOUR RIGHT TO APPEAL YOUR CONVICTION, INCLUDING ANY

7    CONSTITUTIONAL CHALLENGE TO THE STATUTE OF CONVICTION, AND YOU

8    GIVE UP YOUR RIGHT TO APPEAL THE JUDGEMENT OR ANY ORDER OF THIS

9    COURT, BUT WHAT YOU KEEP, WHAT YOU CAN DO ON APPEAL IS TO CLAIM

10   THAT YOUR SENTENCE VIOLATED THIS AGREEMENT OR APPLICABLE LAW OR

11   THE CONSTITUTION, AND YOU RETAIN YOUR RIGHT TO SAY THAT YOUR

12   ATTORNEY WAS INEFFECTIVE.  BUT EVERYTHING ELSE, YOU ARE

13   ESSENTIALLY GIVING UP.

14       AND PARAGRAPH 5, WHICH IS THE NEXT PAGE, SAYS YOU ARE NOT

15   GOING TO FILE ANY COLLATERAL ATTACK OR PARALLEL MOTION TO DO

16   THE SAME THING.  YOU DO, AGAIN, RESERVE YOUR RIGHT TO SAY THAT

17   YOUR ATTORNEY WAS INEFFECTIVE, BUT THESE ARE VERY BROAD WAIVERS

18   OF YOUR RIGHTS TO APPEAL; DO YOU UNDERSTAND?

19            MR. MALDONADO:  YES, I DO.

20            MR. ZARATE:  YES.

21            THE COURT:  NOW LET'S TAKE A SLIGHTLY CLOSER LOOK AT

22   YOUR AGREEMENT.  IN THIS AGREEMENT, YOU ARE PLEADING GUILTY TO

23   COUNT 1 OF THE CAPTIONED INDICTMENT, WHICH CHARGES YOU WITH

24   RACKETEERING CONSPIRACY, OTHERWISE KNOWN AS RICO VIOLATION,

25   TITLE 18 OF THE UNITED STATES CODE, AT 1962, SECTION D.  DO YOU

```
 1        UNDERSTAND THAT, GENERALLY.

 2              MR. MALDONADO:  YES.

 3              MR. ZARATE:  YES.

 4              THE COURT:  IN ORDER FOR THE GOVERNMENT TO PROVE THAT

 5        YOU ARE GUILTY OF THIS OFFENSE, THEY WOULD HAVE TO PROVE THE

 6        FOLLOWING ELEMENTS:

 7              ONE, THAT THE ENTERPRISE ALLEGED IN THE INDICTMENT WAS

 8        ESTABLISHED OR WOULD BE ESTABLISHED.

 9              DO YOU UNDERSTAND THAT ELEMENT?

10              MR. MALDONADO:  YES.

11              MR. ZARATE:  YES.

12              THE COURT:  TWO, THAT YOU WERE EACH ASSOCIATED OR

13        WOULD BE ASSOCIATED WITH THAT ENTERPRISE.

14              DO YOU UNDERSTAND?

15              MR. MALDONADO:  YES.

16              MR. ZARATE:  YES.

17              (PAUSE IN PROCEEDINGS.)

18              THE COURT:  NUMBER THREE, THAT YOU KNOWINGLY AGREED

19        TO CONDUCT OR TO PARTICIPATE DIRECTLY OR INDIRECTLY IN THE

20        CONDUCT OF THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF

21        RACKETEERING ACTIVITY, AND THAT A CONSPIRATOR WOULD COMMIT AT

22        LEAST TWO ACTS OF RACKETEERING.

23              DO YOU UNDERSTAND?

24              MR. MALDONADO:  YES.

25              MR. ZARATE:  YES.
```

1           THE COURT:  AND FOUR, THAT THE ENTERPRISE OR ITS

2     ACTIVITIES DID AFFECT OR WOULD HAVE AFFECTED INTERSTATE OR

3     FOREIGN COMMERCE.

4        DO YOU UNDERSTAND?

5           MR. MALDONADO:  YES.

6           MR. ZARATE:  YES.

7           THE COURT:  NOW THE MAXIMUM PENALTIES FOR A VIOLATION

8     OF THIS PROVISION ARE AS FOLLOWS:

9        A MAXIMUM PRISON TERM OF LIFE.  DO YOU UNDERSTAND?

10          MR. MALDONADO:  YES.

11          MR. ZARATE:  YES.

12          THE COURT:  A MAXIMUM SUPERVISED RELEASE TERM OF FIVE

13    YEARS.  DO YOU UNDERSTAND?

14          MR. MALDONADO:  YES.

15          MR. ZARATE:  YES.

16          THE COURT:  A MAXIMUM FINE OF $250,000.  DO YOU

17    UNDERSTAND?

18          MR. MALDONADO:  YES.

19          MR. ZARATE:  YES.

20          THE COURT:  MANDATORY SPECIAL ASSESSMENT OF $100 AND

21    FORFEITURE AND RESTITUTION, TO THE EXTENT THE COURT FINDS IT

22    APPROPRIATE.  DO YOU UNDERSTAND THAT?

23          MR. MALDONADO:  YES.

24          MR. ZARATE:  YES.

25          THE COURT:  NOW IF YOU CHANGE YOUR PLEA TODAY, YOU DO

1    SO NOT KNOWING WHAT MY SENTENCE IS GOING TO BE, AND ALTHOUGH WE

2    HAVE SCHEDULED THIS TO HAVE SENTENCING IMMEDIATELY FOLLOW, WE

3    AREN'T TALKING ABOUT SENTENCING UNTIL I AM SURE I KNOW WHAT YOU

4    ARE DOING IN TERMS OF A PLEA, AND I'M NOT GOING TO TALK TO YOU

5    ABOUT SENTENCING.

6        SO YOU CHANGE YOUR PLEA NOT KNOWING WHAT I'M GOING TO DO;

7    DO YOU UNDERSTAND?

8            MR. MALDONADO:  YES.

9            MR. FLANAGAN:  YOUR HONOR, MR. MALDONADO --

10           THE COURT:  I WILL EXPLAIN THAT.  LET ME CONTINUE.

11       WITH RESPECT TO MR. MALDONADO, YOU HAVE ENTERED INTO AN

12   11(C)(1)(C) PLEA?

13           MR. MALDONADO:  CORRECT.

14           THE COURT:  AND THAT IS, THE GOVERNMENT AND YOU HAVE

15   AGREED ON A SPECIFIC DISPOSITION.

16           MR. MALDONADO:  CORRECT.

17           THE COURT:  MY ROLE IS TO DECIDE WHETHER OR NOT I

18   ACCEPT IT, RIGHT?

19           MR. MALDONADO:  UNDERSTOOD.

20           THE COURT:  OKAY.

21       SO IF I CHOOSE TO ACCEPT IT, THAT'S WHAT THE SENTENCE WILL

22   BE.  IF I CHOOSE NOT TO ACCEPT IT, AND IT IS MY CHOICE, THEN

23   YOUR PLEA WILL BE WITHDRAWN AND WE WILL GO BACK TO THE

24   BEGINNING, YOUR NOT GUILTY PLEA WILL BE REINSTATED.

25           DO YOU UNDERSTAND THAT PROCESS?

1          MR. MALDONADO:  YES.

2          THE COURT:  OKAY.

3      WITH RESPECT TO YOU, MR. ZARATE, YOU HAVE A DIFFERENT KIND

4  OF PLEA, IT'S AN 11 -- AN 11(C)(1)(B) PLEA.  AND HERE, AGAIN,

5  IF YOU ENTER YOUR GUILTY PLEA, YOU DO SO NOT KNOWING WHAT MY

6  SENTENCE IS GOING TO BE; DO YOU UNDERSTAND?

7          MR. ZARATE:  YES.

8          THE COURT:  ONE OF THE THINGS THAT WE WILL GO INTO

9  DETAIL, IS THESE ARE COMPLICATED SENTENCING GUIDELINES, THERE

10  ARE -- I DON'T KNOW IF YOU ARE ABLE TO SEE IT WHEN YOU TALK TO

11  THE LAWYERS OR NOT, BUT THIS IS THE GUIDELINES MANUAL.  SO

12  EVERY CRIME THAT THE FEDERAL JUDGES LOOK AT AND SENTENCE ON, WE

13  CAN FIND OUT HOW WE CALCULATE WHAT THE OFFENSE LEVEL IS.

14      WE THEN LOOK AT YOUR CRIMINAL HISTORY BACKGROUND AND GET A

15  CRIMINAL HISTORY CATEGORY.  THERE'S NO AGREEMENT HERE, WITH

16  RESPECT TO THE PARTIES, AS TO WHAT THAT IS, ALTHOUGH I THINK

17  PEOPLE KNOW WHAT IT IS AT THIS POINT, AT LEAST.

18      AND THEN WE TAKE THOSE TWO NUMBERS AND WE LOOK AT A

19  SENTENCING TABLE.  THIS IS THE SENTENCING TABLE.  SO I'VE

20  OUTLINED HERE IN ORANGE, THE OFFENSE LEVEL, AND I WILL GIVE YOU

21  AN EXAMPLE.  AND I HAVE OUTLINED HERE IN -- HIGHLIGHTED HERE IN

22  YELLOW -- WHAT THE CRIMINAL HISTORY CATEGORY IS, AS JUST AN

23  EXAMPLE.

24      I THINK, MR. ZARATE, WE THINK YOUR OFFENSE LEVEL IS A 34.

25  THAT'S DOWN HERE.

```
 1              MR. ZARATE:  YES.

 2              THE COURT:  SO IF YOU WERE AN OFFENSE LEVEL -- OR

 3       CRIMINAL HISTORY 1, WHICH YOU ARE NOT, BUT IF YOU WERE, THIS

 4       CHART TELLS ME I SHOULD THINK ABOUT A SENTENCE WHICH IS IN THE

 5       RANGE OF 151 MONTHS TO 188.

 6              WE BELIEVE, I DON'T THINK THERE'S ANY DISAGREEMENT THAT

 7       YOU ARE 5, YOU ARE CRIMINAL HISTORY 5, WHICH IS ON THE FAR

 8       SIDE.  SO FOR A LEVEL 34, AT A CRIMINAL HISTORY 5, THIS TELLS

 9       ME I SHOULD CONSIDER A SENTENCE THAT'S IN THE RANGE OF

10       235 MONTHS TO 293 MONTHS.  THAT'S THE STARTING POINT.

11              AFTER I LOOK AT THE STARTING POINT, THEN I HAVE TO

12       CONSIDER ALL SORTS OF OTHER FACTORS UNDER TITLE 18 OF THE

13       UNITED STATES CODE, INCLUDING TO PROMOTE RESPECT FOR THE LAW,

14       TO INCREASE DETERRENCE, TO THINK ABOUT THE CHARACTERISTICS OF

15       THE INDIVIDUALS IN FRONT OF ME, TO PROTECT THE PUBLIC, PUBLIC

16       SAFETY.  ALL OF THOSE ISSUES HAVE TO BE CONSIDERED BEFORE I CAN

17       MAKE AN APPROPRIATE DETERMINATION OF A SENTENCE.

18              SO YOU UNDERSTAND IF YOU CHANGE YOUR PLEA, YOU DO SO

19       BEFORE HEARING FROM ME ON EACH OF THOSE TOPICS; DO YOU

20       UNDERSTAND?

21              MR. ZARATE:  YES.

22              THE COURT:  DO YOU UNDERSTAND?

23              MR. MALDONADO:  YES.

24              THE COURT:  NOW I WILL SAY THERE IS AN IMPORTANT

25       ADDITIONAL PIECE FOR YOU, MR. MALDONADO.
```

1          AND THAT IS, UNDER YOUR AGREEMENT WITH THE GOVERNMENT, IF

2    FOR SOME REASON SENTENCING DOES NOT PROCEED TODAY, AND LET'S

3    SAY I ACCEPT YOUR PLEA, AND YOU GO BACK TO ATWATER AND I'M

4    GOING TO SENTENCE YOU ANOTHER DAY, IF YOU FAIL TO COMPLY WITH

5    THE TERMS OF THE AGREEMENT, BETWEEN THE TIME I TAKE YOUR PLEA

6    AND THE TIME OF YOUR SENTENCING, AND YOU VIOLATE THE LAW OR

7    OTHERWISE BREACH THE AGREEMENT, THIS AGREEMENT IS NO LONGER

8    BINDING ON THE GOVERNMENT AND I CAN IMPOSE ANY SENTENCE THAT I

9    THINK IS APPROPRIATE, AND I AM NOT BOUND EITHER BY THE JOINT

10   RECOMMENDATION.

11        DO YOU UNDERSTAND?

12             MR. MALDONADO:  I UNDERSTAND.

13             THE COURT:  IS ANYONE FORCING YOU TO CHANGE YOUR

14   PLEA?

15             MR. MALDONADO:  NO.

16             MR. ZARATE:  NO.

17             THE COURT:  ARE YOU DOING IT TO PROTECT SOMEONE?

18             MR. MALDONADO:  NO.

19             MR. ZARATE:  NO.

20             THE COURT:  HAS ANYONE PROMISED YOU ANYTHING IN

21   EXCHANGE FOR A CHANGE OF PLEA, OTHER THAN WHAT'S IN YOUR

22   AGREEMENT WITH THE GOVERNMENT?

23             MR. MALDONADO:  NO.

24             MR. ZARATE:  NO.

25             THE COURT:  SO YOU ARE DOING THIS VOLUNTARILY?

1           MR. MALDONADO:  YES, I AM.

2           MR. ZARATE:  YES.

3           THE COURT:  BEFORE I CAN ACCEPT YOUR PLEA, I STILL

4    NEED TO MAKE SURE THERE IS A SUFFICIENT INDEPENDENT BASIS FOR

5    THE PLEA.

6       I WILL ASK MR. RUBINO TO TELL ME WHAT THE GOVERNMENT COULD

7    PROVE IF WE HAD GONE TO TRIAL ON YOUR CASES.  I MAY INTERRUPT

8    HIM, BUT EACH OF YOU SHOULD LISTEN CLOSELY.

9       WE WILL START WITH YOU, MR. MALDONADO, BECAUSE I WILL HAVE

10   QUESTIONS FOR YOU REGARDING WHAT HE'S TELLING ME; DO YOU

11   UNDERSTAND?

12          MR. MALDONADO:  YES.

13          THE COURT:  ALL RIGHT.

14      LET'S START WITH MR. MALDONADO.

15      MR. RUBINO.

16          MR. RUBINO:  YES, YOUR HONOR.

17      AS TO MR. MALDONADO, THE GOVERNMENT IS PREPARED TO PROVE

18   THAT NUESTRA FAMILIA IS A PRISON GANG THAT HAS EXISTED FOR MANY

19    YEARS AND THAT MR. MALDONADO WAS A MEMBER OR ASSOCIATE.

20      THE GOVERNMENT WOULD FURTHER PROVE THAT HE AGREED WITH

21   OTHER NF MEMBERS AND ASSOCIATES TO ENGAGE IN MULTIPLE CRIMINAL

22   ACTIVITIES IN SERVICE OF THE GANG, INCLUDING CONSPIRACY TO

23   COMMIT MURDER AND DRUG TRAFFICKING.

24      IN 2018 AND 2019, WHILE INCARCERATED AT CALIFORNIA STATE

25   PRISON IN SACRAMENTO, HE HAD LEADERSHIP RESPONSIBILITIES FOR

20

1    THE NF SANTA CLARA COUNTY REGIMENT.  AND HE USED CONTRABAND

2    CELL PHONES TO COORDINATE STREET GANG ACTIVITIES WITHIN THAT

3    REGIMENT.

4         DURING THAT TIME, MR. MALDONADO ORDERED TWO MURDERS OF

5    NORTEÑOS WHO ALLEGEDLY VIOLATED THE ORGANIZATION'S RULES.  IN

6    BOTH CASES, HE DID SO BY CALLING MR. ZARATE AND INSTRUCTING HIM

7    TO CONTACT THE RELEVANT ENTERPRISE AUTHORITY WHERE THOSE

8    NORTEÑOS WERE BEING HOUSED AND HAVE THEM ATTACKED.

9         MR. MALDONADO ALSO HAD RESPONSIBILITY, WITHIN THE PRISON

10   WHERE HE WAS HOUSED, FOR OVERSEEING THE SALE OF DRUGS AND

11   CONTRABAND CELL PHONES.

12        AND FINALLY, THE GOVERNMENT WOULD ALSO PROVE THAT NF,

13   DURING THIS TIME, HAD AN EFFECT ON INTERSTATE COMMERCE.

14        THE COURT:  OKAY.

15        MR. MALDONADO, IS THAT ACCURATE?

16        MR. MALDONADO:  YES.

17        THE COURT:  AND YOUR ROLE IN THE ORGANIZATION IS

18   ACCURATELY DESCRIBED?

19        MR. MALDONADO:  YES.

20        THE COURT:  AND IT IS TRUE THAT THERE WERE TWO

21   INDIVIDUALS WHO YOU TOLD MR. ZARATE TO KILL?

22        MR. MALDONADO:  YES.

23        THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND DEAL WITH

24   THE FACTUAL BASIS FOR MR. ZARATE.

25        MR. RUBINO:  YES, YOUR HONOR.

1      AS TO MR. ZARATE, THE GOVERNMENT WOULD AGAIN PROVE THAT

2  NUESTRA FAMILA IS A PRISON GANG THAT EXISTED FOR MANY YEARS,

3  AND THAT MR. ZARATE WAS A MEMBER OR ASSOCIATE.

4      THE GOVERNMENT WOULD FURTHER PROVE THAT HE AGREED WITH

5  OTHER NF MEMBERS AND ASSOCIATES TO ENGAGE IN MULTIPLE CRIMINAL

6  ACTIVITIES IN SERVICE OF THE GANG, INCLUDING CONSPIRACY TO

7  COMMIT MURDER AND DRUG TRAFFICKING.

8      IN 2018 AND '19, MR. ZARATE WORKED FOR NF

9  SANTA CLARA COUNTY REGIMENT UNDER THE DIRECTION OF

10  MR. MALDONADO AND OTHERS, AND DURING THIS TIME, HE CONSPIRED

11  WITH NF MEMBERS AND ASSOCIATES TO KILL TWO NORTEÑOS WHO WERE

12  ACCUSED OF VIOLATING THE GANG'S RULES.

13      MR. ZARATE WAS TOLD BY MR. MALDONADO AND OTHERS, TO

14  TRANSMIT THE ORDER TO KILL THOSE INDIVIDUALS, AND HE RESPONDED

15  THAT HE WOULD TRANSMIT THAT ORDER.

16      THE GOVERNMENT WOULD ALSO PROVE THAT MR. ZARATE WAS

17  INVOLVED IN TRAFFICKING LARGE QUANTITIES OF DRUGS, INCLUDING

18  KILOGRAMS OF COCAINE, AND THE GOVERNMENT WOULD PROVE THAT NF

19  ACTIVITIES, DURING THIS TIME, HAD AN EFFECT ON INTERSTATE

20  COMMERCE.

21          THE COURT:  MR. ZARATE, IS THAT TRUE?

22          MR. ZARATE:  YES, YOUR HONOR.

23          THE COURT:  AND YOU DID, IN FACT, CONSPIRE TO MURDER

24  THE INDIVIDUAL WHO GOES BY THE INITIALS A.R.?

25          MR. ZARATE:  YES.

```
 1              THE COURT:  AND YOU DID, IN FACT, CONSPIRE TO MURDER

 2    THE INDIVIDUAL WHOSE INITIALS ARE E.C.?

 3              MR. ZARATE:  YES.

 4              THE COURT:  MR. MALDONADO, I HAVE UP HERE YOUR

 5    ORIGINAL PLEA AGREEMENT WITH THE GOVERNMENT.  ON THE LAST PAGE

 6    OF THE AGREEMENT, OR THE SECOND TO THE LAST PAGE, IS A

 7    SIGNATURE.  CAN YOU SEE, FROM WHERE YOU ARE STANDING, THAT TOP

 8    SIGNATURE, SIR?

 9              MR. MALDONADO:  YES.

10              THE COURT:  AND IS THAT YOUR SIGNATURE?

11              MR. MALDONADO:  YES, IT IS.

12              THE COURT:  BEFORE SIGNING THIS DOCUMENT, DID YOU

13    HAVE AN OPPORTUNITY TO REVIEW EACH AND EVERY PARAGRAPH WITH

14    YOUR LAWYER?

15              MR. MALDONADO:  YES, I DID.

16              THE COURT:  WITHOUT TELLING ME ANYTHING THAT WAS

17    SAID, TO THE EXTENT YOU HAD ANY QUESTIONS, WERE YOUR QUESTIONS

18    ANSWERED?

19              MR. MALDONADO:  YES, THEY WERE.

20              THE COURT:  WHEN YOU SIGNED IT, YOU READ IT, YOU

21    UNDERSTOOD IT, AND YOU AGREED TO ALL OF IT?

22              MR. MALDONADO:  YES.

23              THE COURT:  OKAY.

24         MR. FLANAGAN, IS THAT YOUR SIGNATURE?

25              MR. FLANAGAN:  YES, IT IS, YOUR HONOR.
```

1    THE COURT:  AND CAN YOU ASSURE ME, BASED UPON YOUR

2    PROFESSIONAL OPINION, THAT YOUR CLIENT UNDERSTANDS THE RIGHTS

3    HE IS GIVING UP BY PLEADING GUILTY?

4    MR. FLANAGAN:  I CAN, YOUR HONOR.

5    THE COURT:  MR. RUBINO, IS THAT YOUR SIGNATURE ON THE

6    BOTTOM OF PAGE 11?

7    MR. RUBINO:  IT IS, YOUR HONOR.

8    THE COURT:  AND YOU HAVE THE AUTHORITY TO REPRESENT

9    THE U.S. ATTORNEY IN THIS CASE ON THIS AGREEMENT?

10    MR. RUBINO:  I DO.

11    THE COURT:  MR. ZARATE, I HAVE YOUR PLEA AGREEMENT.

12    AGAIN, ON THE SECOND TO THE LAST PAGE, PAGE 11, THERE IS A

13    SIGNATURE, SIR.  CAN YOU SEE THAT SIGNATURE?

14    MR. ZARATE:  YES.

15    THE COURT:  AND IS THAT YOUR SIGNATURE?

16    MR. ZARATE:  YES.

17    THE COURT:  BEFORE YOU SIGNED THIS AGREEMENT, DID YOU

18    HAVE AN OPPORTUNITY TO READ EACH AND EVERY PARAGRAPH AND

19    DISCUSS THEM WITH YOUR LAWYER?

20    MR. ZARATE:  YES.

21    THE COURT:  WITHOUT TELLING ME ANYTHING THAT WAS

22    SAID, TO THE EXTENT YOU HAD ANY QUESTIONS, WERE YOUR QUESTIONS

23    ANSWERED?

24    MR. ZARATE:  YES.

25    THE COURT:  SO WHEN YOU SIGNED THIS AGREEMENT, YOU

24

1    READ IT, UNDERSTOOD IT AND AGREED TO ALL OF -- EVERYTHING THAT

2    WAS IN HERE?

3            MR. ZARATE:  YES.

4            THE COURT:  MR. JORDAN, ON THE LAST PAGE, IS THAT

5    YOUR SIGNATURE?

6            MR. JORDAN:  IT IS, YOUR HONOR, YES.

7            THE COURT:  AND CAN YOU ASSURE ME, BASED UPON YOUR

8    PROFESSIONAL OPINION, THAT YOU BELIEVE YOUR CLIENT UNDERSTANDS

9    THE RIGHTS HE IS GIVING UP AS PART OF THIS AGREEMENT?

10           MR. JORDAN:  YES, YOUR HONOR.

11           THE COURT:  MR. RUBINO, AGAIN, THAT'S YOUR SIGNATURE?

12           MR. RUBINO:  YES, YOUR HONOR.

13           THE COURT:  AND YOU CAN REPRESENT THE U.S. ATTORNEY

14   IN THIS MATTER?

15           MR. RUBINO:  YES.

16           THE COURT:  AT THIS POINT, COUNSEL, IS THERE ANY

17   REASON WHY I SHOULD NOT NOW TAKE THIS PLEA?

18           MR. FLANAGAN:  NO, YOUR HONOR.

19           MR. JORDAN:  NO, YOUR HONOR.

20           THE COURT:  IS FORMAL READING OF THE INDICTMENT

21   WAIVED.

22           MR. FLANAGAN:  IT IS, YOUR HONOR.

23           MR. JORDAN:  SO WAIVED, YOUR HONOR.

24           THE COURT:  THEN LET'S START WITH YOU AGAIN,

25   MR. MALDONADO.

1    WHAT IS YOUR PLEA TO COUNT 1 OF THE INDICTMENT WHICH

2    CHARGES YOU WITH RACKETEERING CONSPIRACY, A VIOLATION OF

3    TITLE 18 UNITED STATES CODE, SECTION 1962, SUBSECTION D, FOR

4    CONDUCT HERE IN THE NORTHERN DISTRICT OF CALIFORNIA, GUILTY OR

5    NOT GUILTY?

6        MR. MALDONADO:  GUILTY.

7        THE COURT:  THE COURT FINDS THE DEFENDANT IS FULLY

8    COMPETENT AND CAPABLE OF ENTERING INTO AN INFORMED PLEA, THAT

9    HE IS AWARE OF THE NATURE OF THE CHARGES AND THE CONSEQUENCES

10   OF THAT PLEA.

11       THE COURT FINDS THAT HE KNOWINGLY, VOLUNTARILY AND

12   INTELLIGENTLY, WITH THE ADVICE OF COUNSEL, ENTERS A GUILTY

13   PLEA.

14       THE COURT FURTHER FINDS THAT THERE IS A SUFFICIENT

15   INDEPENDENT FACTUAL BASIS FOR THE PLEA.  I THEREFORE ACCEPT

16   THAT PLEA AND FIND YOU GUILTY OF THAT ONE OFFENSE.

17       MR. ZARATE, WHAT IS YOUR PLEA TO COUNT 1 OF THE

18   INDICTMENT, WHICH CHARGES YOU WITH A VIOLATION OF TITLE 18 OF

19   THE UNITED STATES CODE AT SECTION 1962, SUBSECTION D,

20   RACKETEERING CONSPIRACY, FOR CONDUCT HERE IN THE NORTHERN

21   DISTRICT OF CALIFORNIA, GUILTY OR NOT GUILTY?

22       MR. ZARATE:  GUILTY.

23       THE COURT:  THE COURT FINDS THE DEFENDANT IS FULLY

24   COMPETENT AND CAPABLE OF MAKING AN INFORMED PLEA, HE IS AWARE

25   OF THE NATURE OF THE CHARGES AND THE CONSEQUENCES OF THAT PLEA.

1    HE KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY, WITH THE

2    ADVICE OF COUNSEL, ENTERS A GUILTY PLEA.

3    THE COURT FURTHER FINDS THERE'S A SUFFICIENT INDEPENDENT

4    FACTUAL BASIS FOR THE PLEA.  THE COURT THEREFORE ACCEPTS THE

5    PLEA AND FINDS HIM GUILTY OF THAT ONE OFFENSE.

6    AT THIS POINT, MR. JORDAN, YOU AND MR. ZARATE CAN HAVE A

7    SEAT, AND WE WILL MOVE TO SENTENCING WITH RESPECT TO

8    MR. MALDONADO.  YOU CAN MOVE TO MIC, IF YOU WOULD LIKE.

9        THE COURT:  SO BEFORE WE GET TO SENTENCING HERE, DO I

10   NOW HAVE THE B.O.P. PERSON IN THE COURTROOM?  NO, I DON'T SEE

11   MR. PRICE.

12       (PAUSE IN PROCEEDINGS.)

13       THE COURT:  I HAVE BEEN ADVISED THAT B.O.P. WANTS AN

14   ORDER TO HAVE APPROPRIATE PLACEMENT AND PRESENTENCE REPORTS.

15   HERE, WE ONLY HAVE A MODIFIED REPORT.  SO IT'S GOING TO BE

16   DISCUSSED LATER TODAY IN A STATUS HEARING WITH RESPECT TO THE

17   OTHER DEFENDANTS.  I DON'T KNOW WHAT THAT MEANS FOR PLACEMENT,

18   ONE WAY OR THE OTHER, BUT I RAISE IT NOW, BECAUSE IN

19   MR. MALDONADO'S SITUATION, I ONLY HAVE A PARTIAL PRESENTENCE

20   REPORT, I DO NOT HAVE A FULL REPORT.  AND I DON'T WANT THERE TO

21   BE ANY SUGGESTION THAT I SOMEHOW DIDN'T PROVIDE HIM WITH AN

22   OPPORTUNITY TO HAVE THE FULL REPORT CONSIDERED FOR PURPOSES OF

23   PLACEMENT.  SO DO YOU WANT THE FULL REPORT FINISHED OR NOT?

24       MR. FLANAGAN:  NO, YOUR HONOR.

25       THE COURT:  OKAY.

1    GIVEN THAT WE HAVE ALREADY COME THIS FAR, IF YOU DON'T

2    WANT IT, THEN I'M GOING TO JUST PROCEED.  WITH RESPECT TO THE

3    OTHERS, I WILL PROBABLY, AT THIS POINT, REQUIRE IT.

4        OKAY.  SO AS I MENTIONED, THIS IS AN 11(C)(1)(C) PLEA, THE

5    PARTIES HAVE AGREED TO A DISPOSITION OF 88 MONTHS.

6        THERE IS NO DISPUTE WITH RESPECT TO THE -- FROM WHAT I CAN

7    TELL -- THE GUIDELINE CALCULATIONS.

8        WE BEGIN WITH A BASE OFFENSE LEVEL OF 33, FOR CONSPIRACY

9    TO COMMIT FIRST DEGREE MURDER, UNDER GUIDELINE

10   SECTION 2E1.1(A)(2), AND 2A2.1.

11       THAT IS INCREASED BY TWO LEVELS BECAUSE THESE ARE MULTIPLE

12   OFFENSES TO COMMIT MURDER OF MULTIPLE INDIVIDUALS, NAMELY TWO.

13       THERE IS A TWO LEVEL ENHANCEMENT BECAUSE MR. MALDONADO

14   QUALIFIES AS AN ORGANIZER, LEADER, MANAGER OR SUPERVISOR, UNDER

15   SECTION 3B1.1.

16       HE IS AGREEING TO ACCEPT RESPONSIBILITY, WHICH DECREASES

17   IT BY THREE LEVELS, AND THIS IS PART OF A GLOBAL DISPOSITION,

18   WHICH UNDER SECTION 5(K)2.0 SUBSECTION(A)(2)(B), WOULD REDUCE

19   IT ONE MORE LEVEL, FOR AN ADJUSTED LEVEL OF 33.

20       WITH A CRIMINAL HISTORY CATEGORY OF FIVE, THAT MEANS THE

21   GUIDELINE RANGE IS 210 MONTHS TO 262 MONTHS.  THE AGREED UPON

22   DISPOSITION IS 88 MONTHS, WHICH IS ABOUT A THIRD OF WHAT THE

23   GUIDELINE CALCULATIONS SUGGEST.

24       I WILL SAY WHAT I HAD IN THE OTHERS, WHICH IS THAT IF

25   MR. MALDONADO WASN'T ALREADY SERVING 19 YEARS TO LIFE, I WOULD

1    NOT THINK THAT THAT WAS NECESSARILY AN APPROPRIATE DISPOSITION,

2    BUT GIVEN THAT IT WOULD BE CONSECUTIVE TO 19 YEARS TO LIFE, IT

3    APPEARS TO ME TO BE APPROPRIATE.  I SAY THAT AT THIS JUNCTURE

4    SO THAT YOU KNOW WHAT I'M THINKING.

5         MR. RUBINO?

6              MR. RUBINO:  YES, YOUR HONOR.

7         WELL, AS YOU NOTE, THE SERIOUSNESS OF THE CRIME IS DIRE.

8    MR. MALDONADO HAS PLEDGED HIS LIFE TO THIS ORGANIZATION, THIS

9    DEADLY PRISON GANG, AND WE CAN SEE THE DANGER THAT THIS POSES

10    IN MR. MALDONADO'S ADMITTED CONDUCT, INCLUDING TWO MURDER

11    CONSPIRACIES.  THIS CONDUCT REEKS HAVOC WITHIN THE CALIFORNIA

12    STATE PRISON SYSTEM AND IN THE NEIGHBORHOODS AND COMMUNITIES

13    WHERE THESE NORTEÑO STREET GANGS, THAT THE NF CONTROLS, HOLDS

14    SWAY.

15         THE CRIME IS VERY SERIOUS, BUT AS YOUR HONOR NOTES,

16    MR. MALDONADO IS CURRENTLY SERVING AN INDETERMINATE LIFE

17    SENTENCE, AND IT IS LIKELY THAT REGARDLESS OF THIS PROSECUTION,

18    HE WILL SERVE THE REST OF HIS LIFE, OR THE BETTER PART OF THE

19    REST OF HIS LIFE, IN CUSTODY.  WE'VE DISCUSSED THIS ISSUE

20    BEFORE YOUR HONOR.

21         SO IN THE GOVERNMENT'S VIEW, WE AGREE THAT A SENTENCE OF

22    88 MONTHS, CONSECUTIVE TO THAT STATE SENTENCE, WOULD NOT

23    SATISFY THE 3553(A) FACTORS, IF HE WERE GOING TO BE RELEASED AT

24    THE END OF THAT 88 MONTHS.  BUT BECAUSE OF THE CIRCUMSTANCES OF

25    MR. MALDONADO'S CUSTODY STATUS, WE BELIEVE THAT THIS SENTENCE

1    ACCOMPLISHES THE GOAL OF REMOVING HIM FROM THE STATE PRISON

2    ENVIRONMENT WHERE HE HAS CAUSED SO MUCH HARM, AND MOVING HIM TO

3    A MORE RESTRICTIVE FEDERAL ENVIRONMENT WHERE HE WILL BE CUT OFF

4    FROM THE INDIVIDUALS AND THE METHODS OF COMMUNICATION THAT MAKE

5    THIS CRIMINAL ENTERPRISE POSSIBLE.

6         AND SO GIVEN THAT CONSIDERATION, AND THE OTHER 3553(A)

7    FACTORS, THE GOVERNMENT BELIEVES A SENTENCE OF 88 MONTHS IS

8    APPROPRIATE IN THIS CONTEXT, CONSECUTIVE TO HIS CURRENT STATE

9    SENTENCE.

10              THE COURT:  MR. FLANAGAN?

11              MR. FLANAGAN:  YES, YOUR HONOR.

12         WE AGREE THAT 88 MONTHS IS AN APPROPRIATE RESOLUTION,

13    TAKING INTO ACCOUNT ALL THE RELEVANT FACTORS, INCLUDING PERHAPS

14    IN PARTICULAR, THE FACT THAT MR. MALDONADO IS SERVING A

15    19 YEARS TO LIFE INDETERMINATE SENTENCE IN STATE CUSTODY.

16         SO WE -- AS SET FORTH IN THE AGREEMENT, WE ENDORSE THAT

17    RESOLUTION.

18              THE COURT:  MR. MALDONADO, YOU HAVE THE RIGHT, SIR,

19    TO ADDRESS THE COURT AT YOUR SENTENCING.  WOULD YOU LIKE TO DO

20    SO?

21              THE DEFENDANT:  NO.

22              THE COURT:  ALL RIGHT.

23         THE COURT ACCEPTS THE PARTIES' AGREEMENT, FOR THE REASONS

24    PREVIOUSLY STATED.  THE COURT ALSO ACCEPTS THE ARTICULATION OF

25    WHAT THE GUIDELINE CALCULATIONS ARE.

1      PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS THE

2   JUDGMENT OF THIS COURT THAT ROBERT MALDONADO BE COMMITTED TO

3   THE BUREAU OF PRISONS FOR A TERM OF 88 MONTHS.  THIS IS

4   CONSECUTIVE TO THE STATE CASE THAT HE IS CURRENTLY SERVING.

5      UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT SHALL BE

6   PLACED ON A TERM OF SUPERVISED RELEASE FOR FIVE YEARS.

7      WITHIN 72 HOURS OF RELEASE FROM THE BUREAU OF PRISONS

8   AND/OR THE CALIFORNIA DEPARTMENT OF CORRECTIONS, THE DEFENDANT

9   SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT

10   IN WHICH YOU ARE RELEASED.

11      WHILE ON SUPERVISED RELEASE, YOU SHALL NOT COMMIT ANOTHER

12   FEDERAL, STATE OR LOCAL CRIME; YOU SHALL COMPLY WITH ALL

13   STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS COURT; YOU

14   SHALL REFRAIN FROM THE UNLAWFUL USE OF A CONTROLLED SUBSTANCE

15   AND SUBMIT TO A DRUG TEST WITHIN 15 DAYS OF RELEASE, AND TWO

16   PERIODIC DRUG TESTS THEREAFTER; YOU SHALL HAVE NO CONTACT WITH

17   THE VICTIMS UNLESS OTHERWISE DIRECTED BY PROBATION.

18      THE TWO VICTIMS IN THIS CASE THEN, ARE THE INDIVIDUALS

19   KNOWN AS A.R., AND E.C.  YOU KNOW WHO I'M TALKING ABOUT?

20         MR. MALDONADO:  YES.

21         THE COURT:  DURING THE TERM OF YOUR RELEASE, YOU

22   SHALL BE FULL-TIME EMPLOYED OR FULL-TIME TRAINING FOR

23   EMPLOYMENT, FULL-TIME JOB SEARCH OR SOME COMBINATION THEREOF.

24      YOU SHALL NOT KNOWINGLY PARTICIPATE IN GANG ACTIVITY.  YOU

25   SHALL NOT ASSOCIATE WITH ANY MEMBER OF THE NUESTRA FAMILIA

1    NORTEÑO STREET GANGS, INCLUDING THE NORTHERN STRUCTURE.

2        YOU SHALL NOT WEAR ANY OF THE CLOTHES, COLORS OR INSIGNIA

3    OF THOSE STREET GANGS, WHICH BY THE WAY INCLUDES ANY 49ERS

4    GEAR, IN CASE YOU ARE A 49ERS FAN, IF IT HAS THE COLOR RED IN

5    IT.

6        YOU MUST UNDERGO AN ASSESSMENT FOR MENTAL HEALTH AND DRUG

7    TREATMENT SERVICES.  IF DEEMED APPROPRIATE, YOU ARE REQUIRED TO

8    PAY ALL OR PART OF THE COST OF THOSE TREATMENTS, BUT ONLY TO

9    THE EXTENT THAT YOU ARE ABLE AND AS DETERMINED BY PROBATION.

10        PAYMENTS FOR MENTAL HEALTH TREATMENT SHALL NEVER EXCEED

11    THE COST OF COUNSELING.  PAYMENT FOR DRUG TREATMENT SHALL NEVER

12    EXCEED THE COST OF URINALYSIS AND THE SUBSEQUENT TREATMENT.

13        YOU SHALL HAVE NO CONTACT, WHILE ON SUPERVISED RELEASE,

14    WITH ANY CO-DEFENDANT IN THIS CASE; NAMELY, DAVID CERVANTES,

15    ANTONIO GUILLEN, JAMES PEREZ, SAMUEL LUNA, GUILLERMO SOLORIO,

16    TRINIDAD MARTINEZ, GEORGE FRANCO, STEVEN TRUJILLO,

17    SALVADOR CASTRO, BRYAN ROBLEDO, ALEX YRIGOLLEN, JUAN SOTO,

18    EDGARDO RODRIGUEZ, ERIC ZARATE, ROCKY BRACAMONTE,

19    JOSHUA CORTEZ, WILLIAM RODRIGUEZ, MARVIN RODRIGUEZ,

20    CRISTIAN MORA, MARTIN JOSEPH RUPPEL, JR., AND ANAELISA CUEVAS.

21        OBVIOUSLY, TO THE EXTENT THAT YOU ARE BEING TRANSPORTED

22    WITH THESE INDIVIDUALS, OR B.O.P. OR THE U.S. MARSHALS, HAVE

23    YOU TOGETHER WITH ANY OF THEM, THAT WOULD NOT BE A VIOLATION.

24        YOU MUST COOPERATE IN THE COLLECTION OF DNA AS DIRECTED BY

25    PROBATION.  YOU ARE REQUIRED TO PAY A $100 MANDATORY FINE OR

1      SPECIAL ASSESSMENT.  THE COURT FINDS THAT THE DEFENDANT DOES

2      NOT HAVE THE ABILITY TO PAY A FINE, AND ALL FINES ARE WAIVED.

3            ANYTHING ELSE?

4            MR. FLANAGAN:  TWO MATTERS, YOUR HONOR.

5            FIRST OF ALL, THE PARTIES AGREE, AND THE GOVERNMENT

6      SUBMITTED A SUPPLEMENTAL SENTENCING MEMORANDUM, THAT

7      MR. MALDONADO OUGHT TO GET FEDERAL CREDIT TIME SINCE THE TIME

8      HE WAS FIRST TAKEN INTO FEDERAL CUSTODY, WHICH I UNDERSTAND HAS

9      BEEN THE CASE WITH OTHER DEFENDANTS WHO HAVE BEEN PREVIOUSLY

10     SENTENCED.

11           THE COURT:  THAT'S WHAT I UNDERSTAND.

12           I DON'T THINK I NEED TO PUT ANYTHING ON THE RECORD.  THE

13     BUREAU OF PRISONS HAS MADE A DETERMINATION THAT THEY WILL HAVE

14     CREDIT FROM THE TIME THEY ENTER FEDERAL CUSTODY.

15           MR. FLANAGAN:  THANK YOU, YOUR HONOR.

16           AND THEN SECONDLY, WE WOULD ASK THAT THE COURT RECOMMEND

17     THAT MR. MALDONADO BE PLACED AS CLOSE AS POSSIBLE TO THE

18     BAY AREA IN ORDER TO FACILITATE FAMILY VISITS.

19           THE COURT:  I CAN RECOMMEND THAT, BUT HE'S ALSO

20     WAIVED THE PRESENTENCE FULL INVESTIGATION REPORT, SO IT IS A

21     RECOMMENDATION WITHOUT ANY SUBSTANCE.

22           MR. FLANAGAN:  I UNDERSTAND, YOUR HONOR.

23           THE COURT:  OKAY.  ANYTHING ELSE?

24           MR. FLANAGAN:  NO, YOUR HONOR.

25           THE COURT:  ALL RIGHT.

1          WE ARE ADJOURNED ON YOUR CASE.  YOU CAN TAKE HIM BACK.

2          (PAUSE IN PROCEEDINGS.)

3              THE COURT:  OKAY.  MR. ZARATE, COME ON BACK.

4          ALL RIGHT.  WITH RESPECT TO MR. ZARATE, AGAIN, THE PARTIES

5    DO NOT DISAGREE WITH THE GUIDELINE CALCULATIONS.  AGAIN, WE

6    STARTED AT BASE OFFENSE LEVEL OF 33 FOR CONSPIRACY TO COMMIT

7    FIRST DEGREE MURDER.  THERE ARE MULTIPLE OFFENSES.

8          HERE, THE MURDER TO -- CONSPIRACY TO MURDER THE INDIVIDUAL

9    NAMED A.R., THE CONSPIRACY TO MURDER THE INDIVIDUAL BY THE

10   INITIALS E.C., AND A THIRD DRUG TRAFFICKING.

11         THE ENHANCEMENT HERE IS TWO LEVELS FOR ORGANIZER, LEADER,

12   MANAGER OR SUPERVISOR, BUT HE IS ACCEPTING RESPONSIBILITY WHICH

13   REDUCES IT BY THREE LEVELS.  THERE'S AN ADDITIONAL GLOBAL

14   DISPOSITION, REDUCTION OF ONE, FOR A TOTAL ADJUSTED LEVEL OF

15   34.

16         HIS CRIMINAL HISTORY CATEGORY IS FIVE, WHICH MEANS THAT

17   THE GUIDELINE RANGE IS 235 MONTHS TO 293 MONTHS.  THE

18   GOVERNMENT AND PROBATION IS RECOMMENDING LESS THAN 50 PERCENT

19   OF THE GUIDELINES, AT 108, AND THE DEFENSE IS RECOMMENDING

20   84 MONTHS, WHICH IS ABOUT SEVEN YEARS.

21         LET ME SAY A COUPLE OF THINGS TO START --

22         YOU KNOW WHAT, I'M GOING TO HAVE TO TALK TO HIM AGAIN, I

23   FORGOT SOMETHING.  SO JUST NOT RIGHT THIS MINUTE, BUT DON'T

24   TAKE HIM DOWN.

25         IN PREPARATION FOR THESE PROCEEDINGS, MR. ZARATE, I HAVE

1    REVIEWED AND CONSIDERED THE FOLLOWING:  THE PRE-PLEA

2    PRESENTENCE INVESTIGATION REPORT, THE PROSECUTION'S SENTENCING

3    MEMORANDUM AT 534, THE DEFENSE'S SENTENCING MEMORANDUM AT 533,

4    AND THAT DEFENSE SENTENCING MEMORANDUM INCLUDED 43 LETTERS.

5    THE PRESENTENCE INVESTIGATION REPORT INCLUDED A SENTENCING

6    RECOMMENDATION, IT ALSO INCLUDED AN ADDENDUM WHICH INDICATED

7    THAT TO THE EXTENT THERE WERE OBJECTIONS, ALL THE OBJECTIONS

8    HAD BEEN RESOLVED.

9         BEFORE WE GO FURTHER, HAVE YOU HAD AN OPPORTUNITY TO

10   REVIEW AND CONSIDER THESE DOCUMENTS AND DO YOU WISH TO PROCEED?

11             MR. ZARATE:  YES.

12             THE COURT:  ALL RIGHT.

13        THERE A LOT OF PEOPLE IN THIS COURTROOM, AND I SUSPECT

14   THAT THAT'S A LOT OF YOUR FAMILY MEMBERS?

15             MR. ZARATE:  YES.

16             THE COURT:  SO YOU HAVE A LOT OF SUPPORT.

17             MR. ZARATE:  YES.

18             THE COURT:  AND I HAVE READ EVERYTHING.  I HAVE TO

19   TELL YOU WHAT CONCERNS ME IS THAT NO ONE SEEMS TO RECOGNIZE

20   THAT YOU CONSPIRED TO MURDER TWO INDIVIDUALS.  YOU DON'T HAVE

21   TO SAY ANYTHING, I'M GOING TO GIVE YOU AN OPPORTUNITY, BUT WE

22   ARE LUCKY THAT THEY CAUGHT YOU ALL ON THE TAPES, BECAUSE THEY

23   STOPPED TWO PEOPLE FROM BEING MURDERED.  AND YOU AGREED TO DO

24   THAT.

25        SO I FIND IT -- IT IS NOT INCONSISTENT, I WOULD SAY, THAT

1    SOMEONE LIKE YOU COULD BE A WONDERFUL MEMBER OF THE FAMILY, TO

2    FAMILY MEMBERS, AND STILL HAVE SIGNIFICANT ISSUES AND STILL BE

3    WILLING TO MURDER TWO OTHER INDIVIDUALS.  THOSE TWO THINGS ARE

4    NOT INCONSISTENT.

5        AND I HAVE TO LOOK AT THE WHOLE PICTURE.  AND I HAVE TO

6    PROTECT THE PUBLIC.  AND I HAVE TO THINK ABOUT WHAT YOU HAVE

7    SHOWN ME, IN TERMS OF ACTIONS, TO SUGGEST THAT THE PUBLIC, NOT

8    YOUR FAMILY, BUT THE PUBLIC, IS SAFE WHEN YOU ARE NOT

9    INCARCERATED.

10        YOU WERE DISCHARGED FROM CUSTODY ON AUGUST 27, 2018,

11    RIGHT?

12            MR. ZARATE:  NO, MA'AM.  I WAS DISCHARGED -- OH, YOU

13    MEAN FROM --

14            THE COURT:  FROM STATE CUSTODY.

15            MR. JORDAN:  BROUGHT OVER FROM STATE CUSTODY.

16            MR. RUBINO:  YOUR HONOR, I THINK I COULD CLARIFY.

17    HE WAS DISCHARGED FROM THAT STATE TERM IN 2018, HE WAS

18    PAROLED IN 2015, SO HE WAS OUT OF STATE CUSTODY BEGINNING

19    THERE.

20            THE COURT:  ALL RIGHT.  SO ARE OUT OF STATE CUSTODY

21    IN 2015?

22            MR. ZARATE:  YES.

23            THE COURT:  YOU HAD SERVED EIGHT AND A HALF YEARS, BY

24    MY CALCULATION, UNDER THE PSR, IS THAT WRONG?

25            MR. JORDAN:  HE SAYS IT'S LONGER, YOUR HONOR.

1             THE COURT:  OKAY.

2         SO MORE THAN EIGHT AND A HALF YEARS, AND YET THREE YEARS

3     LATER, OR LESS THAN THREE YEARS LATER, YOU ARE ALREADY

4     CONSPIRING TO COMMIT MURDER AGAIN, OR I DON'T KNOW AGAIN, BUT

5     YOU ARE CONSPIRING TO COMMIT MURDER AND DOING DRUG DEALS AND

6     FULLY INVOLVED WITH NF.

7         SO WHEN PEOPLE SAY TO ME, GIVE HIM A SECOND CHANCE, IT

8     SEEMS TO ME YOU'VE ALREADY HAD THAT.  YOU ALREADY SERVED, YOU

9     SHOULD HAVE ALREADY LEARNED YOUR LESSON, AND YET THERE YOU ARE,

10    ENGAGED WITH NF, CONSPIRING TO MURDER PEOPLE.  THAT IS WHAT IS

11    GOING THROUGH MY HEAD.

12        AND YOU SHOULD UNDERSTAND THAT SO THAT YOU CAN THINK ABOUT

13    IT AND YOU AND YOUR ATTORNEY CAN RESPOND.  BECAUSE I APPRECIATE

14    ALL OF THE EFFORT.  I HAVE TO TELL YOU, THAT'S PROBABLY MORE

15    LETTERS THAN I HAVE EVER SEEN.  MR. JORDAN HAS DONE A GREAT JOB

16    TRYING TO HELP YOU, BUT THOSE LETTERS DON'T TAKE INTO ACCOUNT

17    WHAT YOU'VE ACTUALLY DONE, THEY JUST TELL ME YOU ARE A GREAT

18    PERSON WITH THAT GROUP OF PEOPLE, WHICH I CAN BELIEVE.

19        MR. RUBINO?

20             MR. RUBINO:  YOUR HONOR, YOUR REMARKS ECHOED ALMOST

21    EXACTLY WHAT I WAS GOING TO SAY.

22        I ALSO REVIEWED ALL OF THE LETTERS, AND WAS STRUCK BY WHAT

23    A DEVOTED FAMILY MAN HIS FAMILY BELIEVES HIM TO BE, AND I ALSO

24    HAVE NO DOUBT THAT THAT'S TRUE.  BUT AS WE CAN SEE FROM THE

25    ADMITTED OFFENSE CONDUCT IN THIS CASE, MR. ZARATE HAS A

1      DIFFERENT FACE THAT HE SHOWS TO THE COMMUNITY.

2          HE HAS PLEDGED HIS LIFE TO A CRIMINAL ORGANIZATION THAT

3      USES INTIMIDATION AND VIOLENCE, AND VERY OFTEN MURDER, AS WE

4      HAVE SEEN IN THIS CASE, TO PROTECT ITS POWER AND PRESTIGE AND

5      ITS PROFITS.  SO I'M SURE IT'S NOT AN UNCOMMON SITUATION WHERE

6      GANGSTERS ARE SPREADING VIOLENCE IN THE COMMUNITY AND PROFITING

7      OFF THE MISERY OF OTHERS AND THEN STOPPING AT THE STORE ON THE

8      WAY HOME AND BUYING A TOY FOR THEIR CHILDREN.

9          AND THAT SEEMS TO BE THE STORY OF MR. ZARATE, BUT IT

10     DOESN'T CHANGE HOW DESPICABLE HIS CONDUCT IS AND THE THREAT IT

11     POSES TO THE COMMUNITY.

12         AND AGAIN, YOUR POINT, YOUR HONOR, I WAS ALSO GOING TO

13     TOUCH ON, THAT WHEN MR. ZARATE WAS RELEASED IN 2015, HE WAS

14     37 YEARS OLD, AFTER AT LEAST EIGHT AND A HALF YEARS IN STATE

15     CUSTODY, THAT IS YOUNG ENOUGH TO MAKE A NEW START AND A NEW

16     LAW-ABIDING LIFE AND OLD ENOUGH TO KNOW THE CONSEQUENCES OF

17     YOUR ACTIONS.

18         THAT WAS MR. ZARATE'S CHANCE TO TURN OVER A NEW LEAF, BUT

19     HE DIDN'T, HE WENT RIGHT BACK TO BEING A GANGSTER, USING,

20     LIKELY, THE STATUS THAT HE HAD GAINED WHEN HE HAD BEEN IN STATE

21     PRISON, AND RETURNED TO TRAFFICKING DRUGS BY THE KILOGRAM, TENS

22     OF THOUSANDS OF DOLLARS, KILOS OF COCAINE AND OTHER DRUGS, AND

23     PARTICIPATING IN MURDER CONSPIRACIES, CALLING OUT HITS FOR THE

24     SENIOR LEADERS OF NF.

25         AND AS WE HAVE SEEN FROM EARLIER PLEAS IN THIS CASE, THESE

38

1    ARE NO IDLE CHATTER, THESE GUYS CARRY OUT THEIR THREATS, THEY

2    CARRY OUT THESE MURDERS WHEN THEY ARE NOT THWARTED BY LAW

3    ENFORCEMENT.

4         SO I HAVE NO DOUBT THAT MR. ZARATE AND HIS FAMILY WILL SAY

5    THAT HE'S DONE WITH THAT LIFE, THAT HE'S READY TO BE A FAMILY

6    MAN, WHAT ELSE IS HE GOING IT SAY AT THIS POINT, I'M SURE HE'S

7    SAID THAT TO JUDGES AND PAROLE BOARDS BEFORE.  BUT WHAT HAS HE

8    DONE?  WHAT DID HE DO AFTER EIGHT AND A HALF YEARS IN CUSTODY?

9    HE RETURNED RIGHT BACK TO THE LIFE OF A GANGSTER, THE LIFE OF

10   CRIMINALITY.

11        IT WASN'T A MOMENTARY SLIP-UP, THIS ISN'T A DRUG-INDUCED

12   MISTAKE, HE GOT UP EVERY DAY, WEEK AFTER WEEK, MONTH AFTER

13   MONTH, YEAR AFTER YEAR AND DECIDED TO BE A PROFESSIONAL

14   CRIMINAL FOR A DEADLY PRISON GANG.

15        SO THE GOVERNMENT IS ASKING FOR NINE YEARS.  MR. ZARATE,

16   NOT SO LONG AGO, SERVED AT LEAST EIGHT AND A HALF YEARS FOR A

17   CRIME THAT WAS FAR LESS SERIOUS, I'M SURE WE CAN ALL AGREE.

18        MOST PEOPLE WOULD SAY NINE YEARS IS NOT ENOUGH, THE U.S.

19   SENTENCING GUIDELINES WOULD SAY NINE YEARS IS NOT ENOUGH.

20   MR. ZARATE'S GUIDELINES ARE 19 TO 24 YEARS, SO NINE YEARS IS AN

21   EXTRAORDINARY DOWNWARD VARIANCE THAT TAKES INTO ACCOUNT THE

22   SUPPORT AND THE STRONG FAMILY NETWORK THAT MR. ZARATE HAS

23   CULTIVATED AND THAT HE HAS STANDING BEHIND HIM.

24        ALL OF THE MITIGATING FACTORS THAT COULD BE CONSIDERED

25   HAVE BEEN TAKEN INTO ACCOUNT ALREADY IN THIS NINE YEAR

1    RECOMMENDATION, WHICH IS WHY THE GOVERNMENT BELIEVES THERE IS

2    NO PRINCIPLE BASIS TO GO ANY LOWER, GIVEN THIS EXTRAORDINARILY

3    SERIOUS CONDUCT AND THIS EXTRAORDINARY LEVEL OF RECIDIVISM.

4         THANK YOU.

5             THE COURT:  MR. JORDAN?

6             MR. JORDAN:  YES, YOUR HONOR.  THANK YOU.

7         I APPRECIATE YOUR REMARKS, WHICH OF COURSE ARE ALWAYS

8     RIGHT ON POINT AND CENTRAL TO THE CASE.

9         THE DEFENDANT, MR. ZARATE, DOES HAVE STRONG FAMILY

10   SUPPORT.  YOU'VE SEEN ALL THE LETTERS IN FRONT OF YOU.  AND

11   THERE'S ONE LETTER THERE ISN'T THERE, AND THAT IS FROM HIS

12   SISTER TIARA KARIS, BECAUSE SHE WAS ASKING ME IF I WOULD ASK

13   YOUR HONOR IF SHE COULD BRIEFLY ADDRESS THE COURT IN PERSON AS

14   A REPRESENTATIVE FOR THE ENTIRE FAMILY, JUST BRIEFLY.

15        IF YOUR HONOR WOULD GRANT THAT REQUEST.

16             THE COURT:  I WILL.

17             MS. KARIS:  GOOD MORNING, YOUR HONOR.

18             THE COURT:  GOOD MORNING.

19             MS. KARIS:  MY ANXIETY IS REALLY HIGH BECAUSE I

20    DIDN'T HAVE ANY INTENTION ON BEING HERE TODAY BECAUSE I

21    CAN'T -- I'M SO EMOTIONAL BECAUSE OF HIS SENTENCING -- BUT I

22    FELT THE NEED TO COME HERE TO TALK TO YOU AND TELL YOU ABOUT MY

23    BROTHER.

24        WHEN HE WAS RELEASED THIS LAST TIME THAT THEY ARE TALKING

25    ABOUT WHEN HE WAS 37, I SAW THE CHANGE IN HIM AND HIS MATURITY.

1      AND WE WERE ALL YOUNGER BACK THEN, THIS IS ALL OUR FAMILY,

2    WE WERE ALL YOUNGER, SO HIS SUPPORT GROUP, WE ARE OLDER NOW, SO

3    HE HAS A BETTER SUPPORT GROUP, BECAUSE WE ARE OLDER NOW, AND WE

4    CAN HELP HIM, AND WE ARE READY TO HELP HIM, AND I BELIEVE HE

5    TRULY WANTS TO MAKE A CHANGE.

6      AND I WROTE THIS SO I DON'T GET OFF TRACK.

7      I HAVE SEEN A CHANGE IN HIM, AND HE WAS FOCUSING ON HIS

8    ART AND HIS FAMILY, BECAUSE THAT'S WHAT HE LIKES TO DO, HE'S AN

9    ARTSY CRAFTSY KIND OF GUY.  AND HE STARTED TRAVELLING, HE

10   VISITED MY SISTER -- WE HAVE A SISTER THAT LIVES IN THE

11   MIDWEST, AND HE WOULD NEVER GET ON A PLANE.  AND HE GOT ON THE

12   PLANE, AND YOU KNOW, I'M SAYING OH, HE'S AN ADULT, HE'S

13   ADULTING NOW, AND WE WERE REALLY PROUD OF HIM.

14      AND HE WAS -- AND HE'S INTO HIS FITNESS, HIKING, AND

15   STAYING IN SHAPE.  AND HE'S A GRANDPA.  HE HAS TWO

16   GRANDDAUGHTERS THAT ARE SEVEN AND EIGHT, AND HE WOULD LET THEM

17   PAINT HIS NAILS, YOU KNOW, HE WOULD DO ANYTHING FOR THOSE

18   GIRLS.

19      AND HIS YOUNGEST SON IS HERE TODAY, AND HIS YOUNGEST SON

20   IS GOING TO HAVE TWINS.  AND SO THAT'S GREAT NEWS THAT WE GET

21   TO EXPERIENCE AS A FAMILY.  WE HAVE NEVER HAD TWINS IN OUR

22   FAMILY.

23      AND I JUST WANTED TO SAY THAT HE'S THE GLUE THAT KEEPS US

24   TOGETHER, LIKE OUR FAMILY, AND WE NEED HIM AND HE NEEDS US.

25      AND I KNOW THAT I HEARD EVERYTHING THAT YOU GUYS SAID, AND

1    I JUST BELIEVE THAT HE'S READY TO MAKE THE CHANGE.  HE'S A

2    GREAT PERSON, HE'S KIND, HE'S RESPECTFUL TO ELDERS.  LIKE, HE'S

3    ALWAYS HELPING, YOU KNOW, PEOPLE WHEN HE SEES THEM IN THE

4    STORE, ELDERLY LADIES, HE WILL OPEN THE DOOR FOR THEM.  I MEAN,

5    HE'S A GENTLEMAN, HE TRULY IS, AND WE ADORE HIM, AND WE JUST

6    NEED HIM HOME SOONER THAN LATER.

7              THE COURT:  ALL RIGHT.  THANK YOU.  I KNOW THAT

8    WAS --

9              MS. KARIS:  I LOVE YOU, BROTHER.

10              THE COURT:  ALL RIGHT.  MR. JORDAN.

11              MR. JORDAN:  YES, YOUR HONOR.  THANK YOU.

12        SO YOUR HONOR, I HAVE MET WITH MR. ZARATE NUMEROUS TIMES,

13    WE'VE HAD LONG TALKS ABOUT HIS LIFESTYLE, AND HOW -- IN MY

14    MIND, HOW IDIOTIC THESE GANGS ARE AND HOW THEY DO NOTHING FOR

15    PEOPLE AND THEY UPROOT LIVES.

16        AND WE TALKED ABOUT WHETHER HE WOULD HAVE GONE THROUGH

17    WITH THE CONSPIRACY TO MURDER THOSE TWO INDIVIDUALS, AND HE

18    HONESTLY SAID TO ME, THAT SINCE HE WAS OUT OF CUSTODY, AND HE

19    WAS THINKING OF THESE PEOPLE IN JAIL, HE DOESN'T WANT TO

20    JEOPARDIZE GOING TO JAIL, IT'S EASY FOR THEM TO GIVE THE ORDER,

21    THEY WERE ALREADY DOING A LIFE SENTENCE.

22        SO HE TOLD ME HONESTLY, HE COULDN'T SAY WHETHER OR NOT HE

23    WOULD HAVE DONE IT.  I POINTED OUT TO HIM, THAT EVEN IF HE DID

24    IT, THAT'S TRUE, AND IF HE DIDN'T DO IT, SOMEBODY ELSE COULD

25    HAVE DONE IT.  BUT FOR THE GRACE OF GOD AND THE WIRE TAPS,

1    THESE PEOPLE COULD HAVE BEEN KILLED AND YOUR HONOR WOULD BE

2    CERTAINLY GIVING HIM THE 30, 40-YEAR SENTENCE, AND HE WOULD BE

3    FACING A POTENTIAL DEATH PENALTY SENTENCE IN STATE COURT.

4         LUCKILY, THIS DIDN'T HAPPEN.  SO WE ARE IN FRONT OF

5    YOUR HONOR, I UNDERSTAND THE DEFENDANT HAS A LONG HISTORY, OF

6    COURSE THE GOVERNMENT IS A LITTLE SKEPTICAL ABOUT WHETHER HE'S

7    CHANGED.  YOUR HONOR, I WILL SAY HE'S BEEN TAKING CLASSES.

8         THE COURT:  SO MR. JORDAN, WHAT YOU STILL HAVEN'T

9    ADDRESSED IS EVIDENCE THAT HE HAS.  I MEAN, THAT'S THE PROBLEM

10   THAT I'M HAVING, IS THAT THE EVIDENCE THAT IS IN FRONT OF ME,

11   SUGGESTS THAT HE HAS NOT, RIGHT.

12        YOU CAN'T -- YOU DON'T DO NINE YEARS IN CUSTODY, AFFILIATE

13   WITH A PRISON GANG IN STATE CUSTODY AND COME OUT AND DO THEIR

14   BIDDING.  HE DOES THEIR BIDDING.  THIS IS THE WAY IT WORKS.  HE

15   DOES THEIR BIDDING, AND HE CANNOT, FOR WHATEVER REASON, SEEM TO

16   EXTRICATE HIMSELF FROM THEM.  AND SO HERE HE IS AGAIN.

17        MR. JORDAN:  AND HERE HE IS, YOUR HONOR, HAVING PLED

18   GUILTY AND ADMITTED IN A WRITTEN DOCUMENT, EVERYTHING THE

19   GOVERNMENT REQUESTED ABOUT HIS PARTICIPATION IN THIS GANG,

20   ADMITTED THAT IT'S A CRIMINAL GANG, ADMITTED THAT HE WAS PART

21   OF IT, AND I THINK THAT GOES A LONG WAY.  FOR HIM TO TURN HIS

22   BACK ON THE GANG, BECAUSE AGAINST ALL GANG RULES, AGAINST THEIR

23   UNDERSTANDING, HE HAS TOLD YOU UNDER OATH THAT HE WAS A MEMBER

24   OF NF AND THAT NF HAS THESE ILLEGAL ACTIVITIES AND DOES DO

25   THESE AWFUL THINGS.

1      SO HE HAS COME BEFORE YOUR HONOR, TURNING HIS BACK ON

2   THAT, PLEADING GUILTY, AS EARLY AS WE GOT THE PLEA AGREEMENT

3   FROM THE GOVERNMENT, ACKNOWLEDGES HIS GUILT FULLY, NOT

4   APOLOGIZING FOR IT OR TRYING TO GET TO SOME KIND OF REASON WHY

5   HE SHOULDN'T BE BLAMED FOR HIS ACTIVITY.  HE IS TELLING

6   YOUR HONOR, AND THE WORLD, IN THIS OPEN PROCEEDING, THAT HE DID

7   THESE ACTIVITIES FOR THE NF, THAT HE'S TURNING HIS BACK ON THEM

8   AND HE WANTS TO MOVE FORWARD.

9      I DON'T KNOW WHAT ELSE HE COULD DO TO ASSURE YOUR HONOR.

10  OF COURSE YOUR HONOR IS GOING TO BE SKEPTICAL AND SEE THE

11  PROBLEM HERE.  BUT I THINK THE DEFENDANT HAS DONE HIS BEST TO

12  TELL YOUR HONOR HE NO LONGER WANTS TO BE PART OF THIS.  HE HAS

13  VIOLATED THE RULES OF NF BY PLEADING GUILTY TODAY.

14          THE COURT:  I DON'T KNOW WHAT YOU MEAN BY THAT.

15          MR. JORDAN:  WELL, YOUR HONOR --

16          THE COURT:  ALL OF, YOU KNOW, HOW MANY, I HAD 55

17  DEFENDANTS, AND MOST OF THEM HAVE PLED GUILTY.

18          MR. JORDAN:  SOME MAY NOT.

19          THE COURT:  SOME MAY NOT.  BUT OF THE 55, I THINK

20  FOUR ARE STANDING.  SO I DON'T KNOW WHAT YOU MEAN BY THAT,

21  "HE'S VIOLATED THE RULES."

22          MR. JORDAN:  RULES ARE, AS I UNDERSTAND IT, YOU ARE

23  NOT ALLOWED TO ADMIT TO OUTSIDERS THAT THE ORGANIZATION EXISTS,

24  YOU ARE NOT ALLOWED TO ADMIT TO OUTSIDERS THAT YOU ARE A

25  MEMBER, AND YOU ARE CERTAINLY NOT ALLOWED TO ADMIT TO OUTSIDERS

1    THAT YOU ARE COMMITTING THESE ILLEGAL ACTS.

2         THE COURT:  SO AS I UNDERSTAND IT, HE HAS THAT

3    PERMISSION TO PLEAD GUILTY, THAT'S WHAT I UNDERSTAND.

4         AND THE LAST TIME I HAD, AND YOU ALL SHOULD KNOW, THEY ARE

5    IN THE PUBLIC, THE LAST TIME I HAD A SET OF NUESTRA FAMILIA

6    INDIVIDUALS HERE, AND WE DID TRY THAT CASE, THE FIRST SET OF

7    EVIDENCE WERE THE BURNT BODIES THAT WERE IN FRONT OF THE JURY.

8    ALL COMING OUT OF SAN JOSE.  SO THEY WENT TO TRIAL, MANY OF

9    THEM PLED, AND THEN THEY JUST GET BACK IN THE FEDERAL SYSTEM

10   AND THEY DO MUCH OF THEIR OWN STUFF.

11        SOME PEOPLE DO IN FACT REJECT, BECOME COOPERATORS, GO INTO

12   WITNESS PROTECTION, WHICH AGAIN IS A TOTALLY DIFFERENT

13   APPROACH, BUT I FIND IT -- I TAKE ISSUE WITH YOUR NOTION THAT

14   SOMEHOW NF MEMBERS CAN'T PLEAD GUILTY, BECAUSE THEY DO IT ALL

15   THE TIME.

16        MR. RUBINO:  I WOULD JUST ADD, YOUR HONOR, THAT IN

17   THIS CASE, MR. ZARATE'S CO-DEFENDANTS SO FAR HAVE ALL PLED

18   GUILTY, AND ALL WITH SPECIFICITY IN THEIR PLEA AGREEMENTS,

19   DESCRIBED EXACTLY THE SAME STRUCTURE AND FUNCTIONING OF NF THAT

20   MR. ZARATE HAS DESCRIBED.  THERE WAS NO MENTION IN ANY OF THEIR

21   SENTENCINGS THAT THEY'VE TURNED THEIR BACK ON NF.

22        THE COURT:  I INTERRUPTED YOU, MR. JORDAN.  YOU MAY

23   PROCEED.

24        MR. JORDAN:  OKAY.  THANK YOU, YOUR HONOR.

25        YOUR HONOR, I WAS TOUCHING ON THE POINT THAT AGAIN,

1    ALTHOUGH IT IS A SERIOUS OFFENSE, EXTREMELY SERIOUS OFFENSE,

2    THANKFULLY NO ONE WAS ACTUALLY HURT.

3         I UNDERSTAND THE GOVERNMENT PUT THE PEOPLE INTO PROTECTIVE

4    CUSTODY, BUT IN TERMS OF THE FACTS OF THIS CASE, YOU HAVE A

5    SITUATION WHERE NO ONE WAS HURT, THE DEFENDANT HAS STRONG

6    FAMILY SUPPORT, I WON'T REPEAT EVERYTHING IN MY SENTENCING

7    MEMO.

8         HE DID HAVE A DIFFICULT CHILDHOOD, POINTED OUT BY THE

9    PROBATION OFFICER.  THERE IS THE RECENT DEATH OF HIS SON, AND I

10   THINK ALL THOSE FACTORS TOGETHER, AND INCLUDING LOOKING AT

11   WHETHER THIS SENTENCE WOULD BE DISPARATE FROM THE OTHER

12   DEFENDANTS, AND I KNOW YOUR HONOR KNOWS WHAT SENTENCES YOU'VE

13   IMPOSED.

14        THE COURT:  WELL, AND THEY ARE ALL SERVING LIFE OR

15   INDETERMINATE SENTENCES, BUT HE IS NOT, HE IS IN FACT

16   DIFFERENT --

17        MR. JORDAN:  HE IS, YOUR HONOR.

18   HOWEVER THAT ALSO MEANS -- I'M SORRY TO INTERRUPT.  HE

19   WILL BE DOING EVERY DAY OF HIS SENTENCE.

20   THE OTHERS MAY HAVE STATE PRISON SENTENCES FOR LIFE, I

21   KNOW THE GOVERNMENT'S SENTENCES TO THEM ARE CONSECUTIVE, BUT

22   IT'S AN OPEN QUESTION WHETHER THEY WILL ACTUALLY DO ANY

23   ADDITIONAL TIME, GIVEN THEIR AGE AND THE INITIAL STATE

24   SENTENCE.

25        HERE THE DEFENDANT HAS NO STATE SENTENCE, SO EVERY DAY OF

46

1    THE SENTENCE YOU GIVE HIM, HE WILL SERVE, WITHOUT GETTING ANY

2    CONCURRENT TIME WITH ANY STATE SENTENCE, BECAUSE THERE IS NONE.

3        SO I THINK THAT ACTUALLY IS A FACTOR THAT GOES SOMEWHAT IN

4    HIS FAVOR, THAT HIS PUNISHMENT WILL BE REAL PUNISHMENT FOR

5    EVERY DAY.

6        THE COURT:  I HAVE SAID IN ALL OF THOSE OTHER CASES,

7    THAT IF THEY WEREN'T SERVING, IT WOULD BE NOT BE CLEAR TO ME

8    THAT THE SENTENCES I WAS IMPOSING WERE NOT SUFFICIENT.  SO THAT

9    CUTS AGAINST YOUR ARGUMENT, AND I HAVE SAID THAT EVERY TIME I

10    IMPOSE THOSE SENTENCES.

11        MR. JORDAN:  AGREED, YOUR HONOR.

12    BUT I DO BELIEVE IT'S A POSITIVE FACTOR TO THE DEFENDANT

13    THAT WHATEVER SENTENCE YOU GIVE, IT'S AN ACTUAL DAY IN PRISON.

14        THE COURT:  MR. ZARATE, YOU HAVE THE RIGHT TO ADDRESS

15    THE COURT AT YOUR SENTENCING.  YOU MAY DO SO, IF YOU WOULD

16    LIKE.

17        MR. JORDAN:  GIVE ME A SECOND, YOUR HONOR.

18    (PAUSE IN PROCEEDINGS.)

19        MR. ZARATE:  NO.

20    ALL I WOULD LIKE TO SAY IS THAT, YOU KNOW, I HOPE THAT YOU

21    CONSIDER WHAT WE ARE ASKING FOR, BECAUSE ALL I WANT IS JUST TO

22    BE IN THE SAME RANGE AS EVERYBODY ELSE IN THIS CASE.  AND

23    THAT'S IT.

24        THE COURT:  MS. CHU, DO YOU WANT TO ADD ANYTHING?

25        PROBATION OFFICER:  NO, YOUR HONOR.

1          THE COURT:  MR. RUBINO?

2          MR. RUBINO:  NOTHING FURTHER, YOUR HONOR.

3     THANK YOU.

4          THE COURT:  MR. JORDAN?

5          MR. JORDAN:  NO, YOUR HONOR.

6     THANK YOU.

7          THE COURT:  MR. ZARATE, AS I INDICATED, THE

8     GUIDELINES TELL ME THAT I SHOULD BE SENTENCING YOU TO SOMEWHERE

9     IN THE NEIGHBORHOOD OF 19 TO 24 YEARS.  I'M NOT GOING TO DO

10    THAT.  BUT I HAVE REAL PROBLEMS WITH THE NOTION OF SENTENCING

11    YOU TO SOMETHING LESS THAN WHAT YOU HAVE ALREADY SERVED FOR

12    CONDUCT THAT IS SIGNIFICANTLY WORSE AND WHERE YOU HAVE NOT

13    LEARNED ANY LESSON.

14         I'M A FIRM BELIEVER IN PROGRESSIVE PUNISHMENT.  AND YOU

15    WERE TOO HIGH IN THE STRUCTURE FOR ME TO JUST NOT TAKE THAT

16    INTO ACCOUNT.  AND FRANKLY, I FEEL FOR YOUR FAMILY.  THEY

17    OBVIOUSLY LOVE YOU, AND IT SOUNDS TO ME LIKE YOU ARE VERY GOOD

18    TO THEM, BUT YOU ARE A DANGEROUS MAN.  AND YOU'RE A DANGEROUS

19    MAN BECAUSE YOU DO THE BIDDING OF THOSE WHO HAVE MORE CONTROL

20    AND MORE POWER THAN YOU DO.

21         I WILL SHAVE OFF A LITTLE BIT FROM THE GOVERNMENT'S

22    RECOMMENDATION, GIVEN YOUR FAMILY TIES, AND JUST TO ACKNOWLEDGE

23    THEIR SUPPORT, BUT NOT MUCH.  I CANNOT, IN GOOD CONSCIENCE, DO

24    THAT, NOT WITH THE PUBLIC SAFETY AT STAKE, AND YOUR OBVIOUS

25    INABILITY TO NOT ENGAGE WITH NF.

1         IT COULD BE THAT YOU ARE MORE OF A FOLLOWER THAN A LEADER,

2    BUT YOU ARE TOO HIGH IN THE STRUCTURE, AND I CANNOT, FOR ALL OF

3    THE OTHER FAMILIES LIKE THEM, FOR ALL OF THE OTHER FAMILIES WHO

4    ARE NOT HERE, I CANNOT GIVE YOU WHAT YOU'RE ASKING FOR.

5         PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS THE

6    JUDGMENT OF THIS COURT THAT ERIC ZARATE BE COMMITTED TO THE

7    BUREAU OF PRISONS FOR A TERM OF 100 MONTHS.

8         UPON RELEASE FROM IMPRISONMENT, YOU SHALL BE PLACED ON

9    SUPERVISED RELEASE FOR A TERM OF FIVE YEARS.  WITHIN 72 HOURS

10   OF RELEASE, YOU SHALL REPORT IN PERSON TO THE PROBATION OFFICE

11   IN THE DISTRICT IN WHICH YOU ARE RELEASED.

12        WHILE ON SUPERVISED RELEASE, YOU SHALL NOT COMMIT ANOTHER

13   FEDERAL, STATE OR LOCAL CRIME; YOU SHALL COMPLY WITH STANDARD

14   CONDITIONS ADOPTED BY THIS COURT; YOU SHALL REFRAIN FROM ANY

15   UNLAWFUL USE OF A CONTROLLED SUBSTANCE AND SUBMIT TO A DRUG

16   TEST WITHIN 15 DAYS OF RELEASE AND TWO PERIODIC DRUG TESTS

17   THEREAFTER.

18        IN ADDITION, YOU SHALL HAVE NO CONTACT WITH THE VICTIMS,

19   UNLESS OTHERWISE DIRECTED BY PROBATION.  YOU KNOW WHO THEY ARE,

20   CORRECT?

21        MR. ZARATE:  YES.

22        THE COURT:  YOU MUST, AT ALL TIMES, HAVE EITHER

23   FULL-TIME EMPLOYMENT, FULL-TIME TRAINING FOR EMPLOYMENT OR

24   FULL-TIME JOB SEARCH OR SOME COMBINATION THEREOF.

25        YOU MUST PAY A SPECIAL MANDATORY ASSESSMENT OF $100.

1        YOU MUST UNDERGO AN ASSESSMENT FOR MENTAL HEALTH TREATMENT

2    SERVICES.  IF DEEMED APPROPRIATE, YOU MUST PAY FOR ALL OR PART

3    OF THE COST OF THIS TREATMENT AS DIRECTED BY PROBATION, BUT

4    ONLY WHAT YOU CAN AFFORD.

5        PAYMENTS WILL NEVER EXCEED THE COST OF MENTAL HEALTH

6    COUNSELING.  THAT TREATMENT CAN SOMETIMES INCLUDE GOOD DECISION

7    MAKING, WHICH YOU HAVE NONE.

8        YOU MUST NOT KNOWINGLY PARTICIPATE IN GANG ACTIVITY, YOU

9    MUST NOT ASSOCIATE WITH ANY MEMBER OF THE NUESTRA FAMILIA OR

10   NORTEÑO STREET GANGS, INCLUDING THE NORTHERN STRUCTURE.

11       YOU MUST NOT WEAR THEIR CLOTHES, COLORS OR INSIGNIA OF

12   NUESTRA FAMILIA OR NORTEÑO STREET GANGS.  AND I TELL

13   INDIVIDUALS THAT INCLUDES THE RED FROM THE 49ERS GEAR.

14       YOU MAY NOT HAVE CONTACT WITH ANY CO-DEFENDANT IN THIS

15   CASE:  NAMELY, DAVID CERVANTES, ANTONIO GUILLEN, JAMES PEREZ,

16   SAMUEL LUNA, GUILLERMO SOLORIO, TRINIDAD MARTINEZ,

17   GEORGE FRANCO, STEVEN TRUJILLO, SALVADOR CASTRO, BRYAN ROBLEDO,

18   ALEX YRIGOLLEN, JUAN SOTO, EDGARDO RODRIGUEZ, ROBERT MALDONADO,

19   ROCKY BRACAMONTE, JOSHUA CORTEZ, WILLIAM RODRIGUEZ,

20   MARVIN RODRIGUEZ, CRISTIAN MORA, MARTIN RUPPEL AND

21   ANAELISA CUEVAS.

22       YOU MUST COOPERATE IN THE COLLECTION OF DNA AS DIRECTED BY

23   PROBATION.

24       THE COURT FINDS YOU DO NOT HAVE THE ABILITY TO PAY A FINE

25   AND ALL FINES ARE WAIVED.

1    UPON RELEASE, YOU AGREED IN ADVANCE TO A MANDATORY SEARCH

2    CONDITION WHICH REQUIRES THAT YOU SUBMIT YOUR PERSON,

3    RESIDENCE, OFFICE, VEHICLE, ELECTRONIC DEVICE AND THEIR DATA,

4    INCLUDING ANY CELL PHONES, COMPUTERS, ELECTRONIC STORAGE MEDIA,

5    OR ANY PROPERTY UNDER YOUR CONTROL TO A SEARCH, WHENEVER ASKED

6    BY A UNITED STATES PROBATION OFFICER, OR ANY FEDERAL STATE OR

7    LOCAL LAW ENFORCEMENT OFFICER, AT ANY TIME IN THE DAY OR NIGHT

8    WITH OUR WITHOUT SUSPICION.

9    YOU MUST WARN RESIDENTS WITH WHOM YOU LIVE THAT YOU ARE

10   SUBJECT TO THAT PROVISION.  FAILURE TO COMPLY CAN BE GROUNDS

11   FOR REVOCATION AND YOU CAN BE RETURNED TO CUSTODY.

12   I UNDERSTAND THERE'S A REQUEST FOR PLACEMENT AS CLOSE TO

13   THE BAY AREA AS POSSIBLE, OR AS CLOSE TO SAN JOSE AS POSSIBLE.

14   THAT RECOMMENDATION IS ORDERED.

15        MR. JORDAN:  THANK YOU, YOUR HONOR.

16        THE COURT:  ANYTHING ELSE?

17        MR. JORDAN:  YES.

18   THIS ISSUE WILL REMAIN OF WHETHER OR NOT THE DEFENDANT

19   SHOULD GET CUSTODY CREDIT SINCE HIS ARRIVAL.

20        THE COURT:  AND I BELIEVE THE ANSWER FOR HIM IS NO.

21   AND I DON'T HAVE AUTHORITY -- I HAVE THE AUTHORITY FROM

22   THE GOVERNMENT ON THAT TOPIC AND NO AUTHORITY TO THE CONTRARY

23   UNDER THE SUPREME COURT PRECEDENT THAT'S BEEN CITED TO ME.

24        MR. JORDAN:  THAT'S CORRECT, YOUR HONOR.

25   THE ONLY DIFFERENCE IS THE FACTUAL DIFFERENCE HERE, THE

1    DEFENDANT MAY END UP NOT HAVING ANY STATE SENTENCE THAT HE

2    WOULD GET CREDIT FOR.

3        THE CASES ALL TALK ABOUT A DEFENDANT SHOULD NOT GET DOUBLE

4    CREDIT.  THEY SHOULD NOT GET CREDIT FOR BOTH A STATE PRISON

5    SENTENCE AND A FEDERAL PRISON SENTENCE.

6        I'M ABLE TO FIND A CASE WHERE IF THE DEFENDANT GETS NO

7    TIME ON HIS PENDING CHARGES IN SAN JOSE, I AGREE THAT IF HE

8    GETS TIME, THEN THAT TIME WOULD BE CREDITED TO THE SAN JOSE

9    CASE.  BUT IF HE DOES NOT, I BELIEVE HE SHOULD BE ENTITLED TO

10   GET CREDIT FOR THE IN-CUSTODY HE DID.  HE SHOULD NOT GET DOUBLE

11   CREDIT, HE SHOULD GET SINGLE CREDIT.

12        MR. RUBINO:  AND HE WILL, YOUR HONOR.

13        SO THAT'S A STRAIGHTFORWARD APPLICATION OF 3585(B).  HE

14   WILL GET CREDIT TOWARDS THE TIME SPENT AT ATWATER IF HE RETURNS

15   TO THE STATE AND DOESN'T RECEIVE A STATE SENTENCE.

16        THE COURT:  OKAY.  SO HERE'S WHAT WE WILL DO.  THAT

17   IS THE LAW, THAT IS MY UNDERSTANDING, THE GOVERNMENT'S

18   UNDERSTANDING, YOUR UNDERSTANDING.  IF HE DOES NOT GET IT, YOU

19   COME BACK HERE AND TALK TO ME.

20        MR. JORDAN:  THANK YOU, YOUR HONOR.

21        THE COURT:  OKAY.  WE ARE ADJOURNED.

22        MR. RUBINO:  YOUR HONOR, I DON'T KNOW IF WE ORDERED

23   -- APOLOGIES, YOUR HONOR.  NO RESTITUTION WILL BE ORDERED.

24        THE COURT:  YEAH.  NO RESTITUTION.

25        MR. RUBINO:  THANK YOU, YOUR HONOR.

1          MR. JORDAN:  I'M SORRY, THERE'S ONE FINAL THING.

2       THE DEFENDANT HAS ASKED ME, I BELIEVE THIS WILL HAPPEN AS

3    A MATTER OF COURSE, THAT HE BE SENT BACK TO SANTA CLARA AS SOON

4    AS POSSIBLE TO BEGIN DEFENDING HIMSELF IN THAT OPEN CASE.

5          THE COURT:  I DON'T THINK THERE'S AN ISSUE WITH THAT.

6       AGAIN, IF YOU NEED ME, I'M HERE.

7          MR. JORDAN:  THANK YOU, YOUR HONOR.

8          THE COURT:  MR. FLANAGAN, IF YOU WILL COME BACK HERE,

9    THERE IS ONE THING.  THIS IS A TECHNICAL REQUIREMENT.

10         MR. MALDONADO, IF YOU CAN COME BACK UP.

11      WE ARE BACK ON THE RECORD IN MR. MALDONADO'S CASE.

12   MR. MALDONADO, GIVEN THE UNIQUENESS OF THIS SITUATION, I FORGOT

13   TO FORMALLY DO THE FOLLOWING, AND SO I'M GOING TO DO IT NOW,

14   AND IF YOU WANT ME TO REDO SOME THINGS I DID, BUT IN

15   PREPARATION FOR YOUR SENTENCING PORTION, I DID REVIEW AND

16   CONSIDER THE UNITED STATES SENTENCING MEMORANDUMS AND THE

17   DEFENSE'S SENTENCING MEMORANDUM, PLUS THE PRE-PLEA MODIFIED

18   PRESENTENCE INVESTIGATION REPORT.

19      I'M REQUIRED TO ASK YOU WHETHER YOU HAD SUFFICIENT TIME TO

20   REVIEW AND CONSIDER THOSE DOCUMENTS AND IF YOU WANTED TO

21   PROCEED?

22         MR. MALDONADO:  YES, I DID HAVE TIME.  AND YES, I

23   WISH TO PROCEED.

24         THE COURT:  AND DO YOU WISH ME TO -- NOW THAT I HAVE

25   ASKED YOU THAT, DO YOU WISH ME TO REDO ANYTHING?

1              MR. MALDONADO:  NO.

2              THE COURT:  OKAY.  JUST NEEDED TO MAKE SURE.

3         THANK YOU, SIR.  WE ARE ADJOURNED.

4              MR. FLANAGAN:  THANK YOU, YOUR HONOR.

5         (THE PROCEEDINGS WERE CONCLUDED AT 9:27 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 2/2/23